**John EMENHISER, Appellant**

v.

**The STATE of Texas, State.**

**No. 2–04–248–CR.**

Court of Appeals of Texas,
Fort Worth.

July 27, 2006.

916

David Wacker, Denton, for appellant.

Bruce Isaacks, Criminal District Attorney, Kathleen Walsh, Charles E. Orbison, Lori Moraine, Jeff Fleming, Assistant District Attorneys for Denton County, Denton, for appellee.

Panel F: GARDNER, WALKER, and McCOY, JJ.

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

ANNE GARDNER, Justice.

After reviewing Appellant's petition for discretionary review, we modify our opinion and judgment in this appeal. *See* TEX. R.APP. P. 50. We withdraw our opinion and judgment of April 6, 2006, and substitute the following.

### I. Introduction

A jury convicted Appellant John Paul Emenhiser of two counts of indecency with a child, one count of aggravated sexual assault of a child, and one count of sexual performance by a child and assessed punishment at a total of 149 years' confinement. In six points, Appellant argues that the trial court erred by quashing a subpoena, by barring a witness who violated "the Rule" from testifying, by failing to suppress certain evidence, and by refusing

Appellant's challenge to a venireperson. Appellant also challenges the legal and factual sufficiency of the evidence to support his convictions for sexual performance by a child and indecency with a child. We affirm.

## II. Factual and procedural background

The complainant in this case is K.R., who was thirteen years old at the time of trial. K.R. testified as follows: Appellant was her school bus driver when she was in the fourth and fifth grades. Appellant photographed K.R. and other children on the bus with disposable cameras and, later, a digital camera that she described as "small and silver." On one occasion, Appellant told K.R. to sit on his lap on the school bus. She sat on his lap for five to ten minutes while Appellant "would push up his private part up toward me.... It was hard.... And then later on, he, like, whispered, 'Touch it,' I guess, and he, like, touched my hand ... and put it on there ... [o]n top of his clothes." On a later occasion,[1] K.R. was walking home from a friend's house when she saw Appellant sitting on his motorcycle alone in a parking lot. Appellant gave K.R. a ride to her home on his motorcycle. When they reached her house, K.R. offered Appellant a glass of water or lemonade. Appellant went into the house with K.R. and sat on a couch while drinking the glass of water. K.R. sat at the opposite end of the couch, and the two conversed and watched television. After some time passed, Appellant moved to K.R.'s end of the couch and put his hand on her leg. Eventually, K.R. testified, Appellant removed her clothes and his clothes, penetrated her vagina with his fingers, and had sexual intercourse with her. During the sexual assault, Appellant stopped to photograph K.R.'s face, breasts, and genitals with a digital camera. After the assault, Appellant told K.R. not to tell anyone what had happened or he would "make sure [her friend's] family pays."

When Appellant was evicted from his apartment in August 2003, police found child pornography in the form of conventional and digital photographs among his possessions. They also found over a hundred photographs of K.R. in Appellant's apartment and during a later search of a storage unit leased for Appellant by his sister. They did not, however, find any photographs of K.R. nude. Police interviewed K.R. several times; and she eventually related the incidents described above.

A grand jury indicted Appellant for indecency with a child arising out of the school bus incident and indecency with a child, aggravated sexual assault, and sexual performance by a child arising from the later incident. A jury convicted him on all counts and assessed punishment of imprisonment for ten years for the first indecency count, twenty years for the second indecency count, ninety-nine years for the aggravated-sexual-assault count, and twenty years for the sexual-performance-by-a-child count. The trial court entered judgment accordingly and ordered Appellant to serve his sentences consecutively. Appellant filed this appeal.

---

1. K.R. testified that this second incident occurred in late April or early May of 2002 at the end of her fifth-grade school year. Later, she testified that the incident occurred during "one of the warmer" months when she was in the fifth grade, that Appellant drove her bus on the day of the incident, and that he stopped driving her bus five or six days after the incident. Douglas Becker, the assistant transportation director for the Denton ISD, testified that Appellant stopped driving the bus that serviced K.R.'s school in November 2001 and was fired at the end of March 2002.

## III. Discussion

### A. Subpoena for student names and addresses

In his first point, Appellant argues that the trial court violated his Sixth Amendment right to compulsory process when it quashed a subpoena that directed the Denton ISD to provide Appellant with the names and addresses of every student in K.R.'s middle school class at the time of trial. Appellant argues that the information requested by the subpoena would have allowed him to interview K.R.'s classmates, some of whom might have been able to testify about K.R.'s truthfulness.

 Criminal defendants have a right to compulsory process for obtaining witnesses. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. But the right to compulsory process is not absolute. Defendants have the right to secure the attendance of witnesses whose testimony would be both material and favorable to the defense. *See Coleman v. State,* 966 S.W.2d 525, 527–28 (Tex.Crim.App.1998). To exercise this right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Id.* at 528. Counsel's mere belief that a witness would support the defense's case is insufficient to establish materiality. *Castillo v. State,* 901 S.W.2d 550, 553 (Tex.App.-El Paso 1995, pet. ref'd) (citing *Hardin v. State,* 471 S.W.2d 60, 62 (Tex.Crim.App.1971)). Moreover, the right to compulsory process is dependent upon an accused's initiative, and the nature of the right requires that its effective use be preceded by "deliberate planning and affirmative conduct" by the defendant. *Rodriguez v. State,* 90 S.W.3d 340, 358 (Tex.App.-El Paso 2001, pet. ref'd)

(quoting *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653–54, 98 L.Ed.2d 798 (1988)).

 We review a complaint that the trial court improperly quashed a subpoena for an abuse of discretion. *Drew v. State,* 743 S.W.2d 207, 225 n. 11 (Tex.Crim.App. 1987). Likewise, questions regarding limitations on the right to compulsory process are within the trial court's discretion. *Rodriguez,* 90 S.W.3d at 358.

 The subpoena in question requested the names and addresses of "all students currently in the same class as" K.R. The subpoena was issued on May 14, 2004, and served on Barbara Fischer, the principal of K.R.'s middle school, on the morning of May 18—the day the jury began to hear evidence—and required Fischer to appear with the records at 1:30 p.m. that same day.

Denton ISD filed a motion to quash the subpoena, citing federal law that protects education records from disclosure absent permission from the parents of the affected students and noting that there was not enough time to comply with the subpoena. The trial court briefly recessed the trial to conduct a hearing on the motion to quash on May 18. Fischer testified that collecting the information requested by Appellant would take about four days because the information would have to be compiled by hand. She testified that she would need additional time to contact the parents of the affected children either by mail or phone and secure their permission to disclose the requested information.

Appellant's counsel argued that he needed to know who was in K.R.'s class so that he could interview those students to see if any could express an opinion that K.R. was

not a truthful person. Counsel noted that he had previously obtained the Denton ISD bus roster by subpoena and said that it was "the most valuable piece of evidence that we have had" because he was able to interview the students who rode K.R.'s bus. Counsel eventually offered to restrict the scope of the subpoena to the names and addresses of students in K.R.'s first period class. Describing the subpoena as a "fishing expedition," the trial court granted Denton ISD's motion to quash.

This case is somewhat unusual because Appellant did not intend to call the target of the quashed subpoena, Fischer, as a witness at trial. Rather, Appellant hoped that the information Fischer would provide might lead to the discovery of witnesses whom Appellant could in turn subpoena to testify. In this sense, our case is one step removed from the typical case where a defendant complains that he was denied his compulsory process right because the trial court quashed the subpoena for a witness whom the defendant intended to call to testify at trial. *See, e.g., Coleman,* 966 S.W.2d at 526 (concerning quashed subpoenas for news reporters whom Coleman intended to call as witnesses).

Under the circumstances presented by this case, we hold that the trial court did not abuse its discretion by quashing the subpoena. The record reflects that Fischer would need several days simply to collect the information requested by the subpoena plus some amount of time to contact the parents of the affected students, and Appellant would obviously need additional time to interview the students in the hope of finding one or more who would testify that K.R. was untruthful. By waiting until the time of trial to serve a subpoena that would have substantially delayed the trial, Appellant did not exercise the "deliberate

planning and affirmative conduct" required to trigger the right to compulsory process. *See Rodriguez,* 90 S.W.3d at 358 (holding that trial court did not abuse its discretion by quashing subpoena for school records when appellant waited until the time of trial to complain that subpoena had not been served, and compliance with subpoena would have delayed trial). Further, Appellant made no showing by sworn facts or agreed evidence that the witness's testimony would be material and favorable to the defense. *See Coleman,* 966 S.W.2d at 528. We overrule Appellant's first point.

**B. Exclusion of witness who violated "the Rule"**

■ In his second point, Appellant argues that the trial court erred by excluding the testimony of his court-appointed investigator, Jay Bailey, after Bailey repeatedly violated the rule of sequestration of witnesses ("the Rule"). *See* Tex.R. Evid. 614.

■ Texas Rule of Evidence 614 provides in relevant part, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Tex.R. Evid. 614. The purpose of placing a witness under the Rule is to "prevent the testimony of one witness from influencing the testimony of another." *Cook v. State,* 30 Tex.App. 607, 612, 18 S.W. 412, 412 (1892); *see also Archer v. State,* 703 S.W.2d 664, 666 (Tex.Crim.App.1986); *Hougham v. State,* 659 S.W.2d 410, 414 (Tex.Crim.App. 1983) (Clinton, J., concurring). As a general rule, a witness's testimony cannot be excluded solely on the grounds that the witness violated the Rule, "although the right to exclude under particular circumstances may be supported as within the

sound discretion of the trial court." *Webb v. State*, 766 S.W.2d 236, 241 (Tex.Crim. App.1989) (quoting *Holder v. United States*, 150 U.S. 91, 92, 14 S.Ct. 10, 10, 37 L.Ed. 1010 (1893)).

 In determining whether to disqualify a witness who has violated the Rule, the trial court must balance the interests of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Id.* at 244. We review the trial court's decision to exclude a witness who has violated the rule for an abuse of discretion by applying a two-prong analysis:

> A reviewing court will determine: (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. In applying the test to the facts of this case, we are guided by balancing the benefit of upholding the ruling against the detriment or cost to appellant arising from that ruling, with particular concern as to the circumstances surrounding the trial court's decision to disqualify the witness.

*Id.* at 245; *see also Davis v. State*, 872 S.W.2d 743, 746 (Tex.Crim.App.1994).

In this case, the trial court appointed Jay Bailey to serve as Appellant's investigator. Appellant invoked the Rule at the beginning of trial. Near the end of the guilt-innocence phase of trial, Appellant's counsel stated that he intended to call Bailey as a witness. The State's attorney noted that Bailey had violated the Rule. The trial court took judicial notice of the fact that the trial judge had seen Bailey in the courtroom during testimony. Appellant's counsel argued that Bailey's presence in the courtroom was necessary because he was helping counsel marshal his witnesses.

Appellant made a bill of exceptions by examining Bailey outside the presence of the jury. Bailey testified that he was in the courtroom approximately six times after Appellant invoked the Rule. He entered the courtroom to notify counsel that witnesses had arrived or that he had "made phone calls for witnesses" and on one occasion to borrow counsel's cell phone. Bailey said that he heard one line of testimony and did not even see who was testifying at the time. He stated that he heard no testimony concerning the subject of his own testimony. He expected to testify about the distance between the mobile home where K.R. alleged the sexual assault took place and the neighboring mobile home; about photographs he took of Appellant's body showing obvious and extensive scarring; about photographs of a school bus driver's seat and of Appellant's stomach protruding over his lap when seated;[2] that he had an email from the manufacturer of the digital camera found in Appellant's possession stating that the model of camera in question was not man-

---

2. Bailey testified that these photographs demonstrated that it would be difficult for someone sitting in the driver's seat to hold another person on his lap and that the size of Appel-

lant's stomach would make it difficult for someone seated in his lap to feel Appellant's penis.

ufactured before November 2002; and that Walmart employees told him that the local Walmart did not sell the camera until November 2002. On cross-examination, Bailey admitted that he did not know how the mobile homes appeared when the sexual assault allegedly took place and that he did not know whether the photographs of Appellant's scarring and stomach accurately reflected Appellant's appearance at the times of the alleged offenses. He also admitted that he was told during trial by one of the State's investigators that he should leave the courtroom if he expected to testify.

The trial court ultimately barred Bailey from testifying because he violated the Rule. Appellant orally moved the trial court to reconsider and "come up with some less drastic alternative than actually barring the witness." The trial court denied the motion.

In this case, Bailey committed a technical violation of the Rule, but the violation was slight. Bailey stated that he heard but one line of testimony and that one line did not concern the subject of his own testimony, making remote the possibility that his testimony would be influenced by the testimony of another. Under these particular circumstances, disqualification was not justified. We therefore apply the second prong of the *Webb* test and determine whether the excluded evidence was crucial to the defense.

The State argues that Bailey's testimony was not crucial to the defense for two reasons: his testimony was inadmissible, and it would not negatively affect the probative value of K.R.'s testimony. We agree with the State's analysis.

Bailey's testimony and photographs about the mobile homes had little or no probative value as to the distance between the homes at the time of the offense because Bailey was unable to testify about the appearance and location of the homes at the time of the offense, and no other witness offered such testimony. Moreover, the distance between the homes had marginal evidentiary value at most; there was no evidence that K.R. screamed or did anything else that would have alerted nearby neighbors. Likewise, the photographs of Appellant's scars and protruding stomach had little or no probative value as to his appearance at the time of the offense. Appellant argues that his medical records permit a reasonable inference that the scars depicted in the photographs existed at the time of the offense, but the medical records for the relevant time frame merely state that Appellant was treated for a boil on his groin in January 2002. Finally, Bailey's testimony about the email he received from the camera's manufacturer and his discussion with Walmart employees was inadmissible hearsay to which no hearsay exception applies. *See* TEX.R. EVID. 802, 803, 902.

We hold that Bailey's testimony was not crucial to the defense. Therefore, we cannot say that the trial court abused its discretion by excluding Bailey's testimony, and we overrule Appellant's second point.

## C. Sufficiency of search warrant affidavit

In his first supplemental point, Appellant argues that the trial court erred by failing to suppress evidence seized from a rented storage unit under a search warrant because the affidavit supporting the warrant failed to establish probable cause.

### 1. Standard of review

A magistrate's determination to issue a warrant is subject to a deferen-

tial standard of review. *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex.Crim.App. 2004). The task of the issuing magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Johnson v. State*, 803 S.W.2d 272, 288 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991). The magistrate's determination of probable cause will be sustained if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Swearingen*, 143 S.W.3d at 811; *State v. Delagarza*, 158 S.W.3d 25, 26 (Tex. App.-Austin 2005, no pet.).

### 2. The affidavit

The search warrant affidavit was sworn by Shane Kizer, a Denton Police Department child abuse investigator, on August 21, 2003. Kizer identified the search premises as a ten-foot by ten-foot storage unit at a storage facility in Denton and alleged that the storage room contained child pornography stored on, among other things, computers, computer hardware, and various forms of electronic media. He stated that the storage room was controlled by Appellant and his sister.

As the basis for probable cause, Kizer stated:

> Det. Kizer received a Possession of Child Pornography case to investigate. On 08/19/03 Denton County Constable Justin Yates responded to 620 Texas to serve a Writ of Possession at 620 Texas # 8 Denton, Denton County, Tx. Yates advised that upon his arrival he was advised of some potentially Illegal Pornography involving Children. Yates advised that after entering the apartment he found a substantial amount of Child Pornography. Yates['s] agency notified the Denton Police Department with the information of what he found.

> Officers collected numerous computer disks, and photographs of children engaged in sex acts, nude photos of children printed from a computer printer, and photos of children posed in an inappropriate manner. Most of the children depicted are well under the age of seventeen years of age. Officers collected the items as they were being removed as trash from the above mentioned apartment. The items were removed from the apartment by workers acting as agents for the property owner. 620 Texas # 8 was leased to the suspect: John Paul Emenhiser and no other person.

> Information collected from the apartment management showed John to have been employed by Denton Independent School District. Det. Miller checked with Assistant Director of Transportation for DISD Doug Becker and was told that John drove a school bus for the district but is no longer employed by DISD. Doug advised that John was fired after a complaint by resident ... [who] said that John was chatting on the internet with his daughter. Doug said they terminated his employment shortly thereafter.

> Several photos of elementary and middle school children were among the material found at John's apartment. Some of the photos were of children at the playground of McNair Elementary School in Denton, TX. Other photos were of children on a school bus. School Resource

Officer Bobby Ray was able to identify several of the students in the photos as Denton middle school students.

Det. Kizer was told by a resident living in another apartment who wished to remain anonymous that John worked at a plant nursery in Sanger, TX and once drove a work vehicle home. He described the vehicle as a white cargo van. Det. Miller was aware of a nursery on Cowling Road in Sanger that uses cargo vans to ship their products.

Det. Kizer and Miller contacted representative, Klayton Hartley, of Vast Inc. in Sanger. He advised that John Emenhiser was employed with them but let go in June of 2003. He advised that John had given a sister's name, Darlene Guillory, as a contact person for him with a phone number of.... Det. Kizer did a reverse search on the number. It came back to Darlene Guillory with an address of 302 Eagle Mountain Dr. Lake Dallas, Texas.

Det. Kizer phoned the owners of Frame Street Storage, Al and Jane Glover, at 816 Frame St. in Denton, TX. They advised that Darlene had rented a 10' X 10' storage room on their property for her brother John Emenhiser. Al said Darlene put the storage room in her name because John did not have a picture ID with him. They both stated that Darlene and John indicated that John was now living at Darlene's residence.... Al and Jane said Darlene and John leased the storage unit on August 12, 2003. They both said Darlene has not been back since. They said [that] John has been back a number of times moving property into the storage unit. Al said John was at the storage unit as recent as August 21, 2003 around 8 AM.

### 3. Analysis

From Kizer's affidavit, the magistrate who issued the warrant could conclude that Appellant lost his job in June 2003, moved in with his sister, rented a storage unit, moved "property" into the storage unit, and was forcibly evicted from his apartment shortly thereafter. During the eviction, a constable found child pornography in Appellant's apartment, including computer-printed photographs. Viewing Kizer's affidavit in a practical, common-sense light, the magistrate could have concluded that Appellant transferred property from his apartment to the storage unit in conjunction with his move from the apartment to his sister's house and that the "property" included the computer used to print the photographs and create or access the computer disks found in Appellant's apartment. Such computer equipment was among the items specifically identified by Kizer's affidavit as probably located in the storage unit. We hold that Kizer's affidavit provided the magistrate with a substantial basis for concluding that a search of the storage unit would uncover evidence of wrongdoing.

Appellant draws parallels between the affidavit in this case and the affidavit in *Hass v. State* and argues that Kizer's affidavit, like the one in *Hass,* failed to state probable cause. *See Hass v. State,* 790 S.W.2d 609 (Tex.Crim.App.1990). In *Hass,* one police officer observed the defendant leave a mini-warehouse with a box, put the box in his car, and drive away. *Id.* at 610. Police stopped the car a short distance away, smelled a chemical associated with the production of amphetamine, and found a box containing amphetamine and syringes. *Id.* Police sought a search warrant for the mini-warehouse. *Id.* A

second police officer—who had not seen the defendant enter or leave the mini-warehouse—made a probable cause affidavit in which he swore that he *had* seen the defendant enter the mini-warehouse and exit the warehouse with an "unknown item" which he put in his car. *Id.* at 611. The magistrate issued a search warrant for the mini-warehouse, where police found a controlled substance. *Id.* at 610. At the hearing on the defendant's motion to suppress, the officer who swore the affidavit admitted that he did not see the defendant leave the warehouse with the box containing amphetamine. *Id.* at 611. The court of criminal appeals disregarded the untrue statements in the affidavit and reviewed the remainder. *Id.* at 612. In essence, the reformed affidavit simply stated that police stopped defendant's car near the mini-warehouse and found amphetamine in a box in the car. *Id.* There was nothing in the reformed affidavit to connect the amphetamine and syringes to the warehouse: "The mere fact that suspects had just come from a mini-warehouse and possessed alleged illegal drugs in their automobile does not, without additional facts to link the drugs to the warehouse, justify a search of the warehouse for additional controlled substances." *Id.* The court reversed the defendant's conviction and remanded the case to the trial court. *Id.*

Our case is distinguishable from *Hass*. First, Appellant does not argue, and nothing in the record suggests, that any part of Kizer's affidavit was untruthful; thus, unlike the *Hass* court, we review the entire affidavit. Second, the affidavit in this case clearly links Appellant with the storage unit, unlike the affidavit in *Hass*, which did not link the defendant with the mini-warehouse other than by its proximity to the scene of his arrest. Third, Kizer's affidavit reflected "additional facts" to link the child pornography found in Appellant's apartment with his storage unit. The facts that Appellant was being evicted from his apartment, was moving in with his sister, had rented the storage unit, and was moving "property" into the storage unit, and that child pornography was found among the property remaining in his apartment—all within a narrow time frame—form a substantial basis for the magistrate to find probable cause to believe that Appellant had moved child pornography from his apartment to the storage unit. For these reasons, we reject Appellant's argument that similarities between this case and *Hass* compel the same outcome.

We hold that the trial court did not err by denying Appellant's motion to suppress. We overrule Appellant's first supplemental point.

### D. Challenge for cause

In his second supplemental point, Appellant argues that the trial court erred by denying Appellant's challenge for cause of veniremember Richard Huffman, who vacillated about whether he could consider probation as a punishment.

 We review a trial court's determination of a challenge for cause for abuse of discretion. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). In the case of a vacillating veniremember, we defer to the decision of the trial court, which was in a position to actually see and hear the veniremember in the context of the voir dire. *Granados v. State,* 85 S.W.3d 217, 232–33 (Tex.Crim. App.2002), *cert. denied,* 538 U.S. 927, 123 S.Ct. 1578, 155 L.Ed.2d 321 (2003). Such a ruling will not be disturbed unless there is no adequate basis in the record to sup-

port the ruling. *Vuong v. State,* 830 S.W.2d 929, 944 (Tex.Crim.App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Elements such as demeanor and tone of voice, among other things, are important factors in conveying the precise message intended by the veniremember. *Mooney v. State,* 817 S.W.2d 693, 701 (Tex.Crim.App.1991).

■ When questioned by the State during voir dire, veniremember Huffman stated that he could consider the full range of punishment from probation to life imprisonment. When defense counsel asked a similar question, Huffman stated, "I think I would have a difficult time with probation, too. I would not go for probation.... I would not consider it if he was guilty." Appellant challenged Huffman for cause; the trial court denied the challenge. Huffman had previously asked to approach the bench. Immediately after denying Appellant's challenge, the trial court called Huffman to the bench and questioned him outside the presence of the other veniremembers. When the trial court instructed Huffman to disregard hypothetical situations posed by the State's and Appellant's attorneys, Huffman stated, "I could do probation.... I would consider it."

After both sides made their peremptory strikes and the trial court seated the jury, Appellant's counsel stated that he used peremptory strikes on Huffman and another veniremember and requested two additional strikes for the purpose of striking two objectionable veniremembers who were seated on the jury. The trial court denied his request.

Huffman was a vacillating veniremember. While he did say that he could not consider probation in response to Appellant's questioning, he also said that he *could* consider probation in response to the State's questioning and, more importantly, affirmed that he could consider probation when the trial court told him to disregard hypothetical questions posed by counsel. We therefore hold that the record reflects a substantial basis for the trial court's denial of Appellant's challenge for cause.

■ Appellant also contends that the trial court erred by refusing to allow counsel to ask a specific question of Huffman and other veniremembers. Counsel requested the trial court to ask "on Mr. Huffman, if the issue comes up again, what is it that he observed in the courtroom that helped him reach the conclusion that he would not consider probation.... [I]t would be our position [that] if they observe something about the Defendant that led to their conclusion that they couldn't reach— couldn't give probation, then that would be a proper question to ask them." The trial court replied, "It would be. And while you were asking them, you could have asked [them] that, and that would be good for your—for your peremptory challenges. But it is not a challenge for cause in my opinion. So I—I don't know that I will be asking that question." The trial court did not ask the question of Huffman or any other veniremember.

■ A trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002); *Allridge v. State,* 762 S.W.2d 146, 167 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Lydia v. State,* 117 S.W.3d 902, 904 (Tex.App.-Fort Worth 2003, pet. ref'd). We leave to the trial court's discretion the propriety of a particular question. *Sells v. State,* 121 S.W.3d 748, 755 (Tex.Crim.App.), *cert. denied,* 540

U.S. 986, 124 S.Ct. 511, 157 L.Ed.2d 378 (2003); *Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 167; *Lydia,* 117 S.W.3d at 904.

Appellant states generally that the trial court erred by refusing to ask his proposed question, but he cites no authority for the argument and does not explain how the trial court abused its broad discretion. Our own review of the record does not reveal an abuse of discretion. We therefore hold that the trial court did not abuse its discretion by refusing to ask Huffman the question proposed by Appellant.

We overrule Appellant's second supplemental point.

### E. Legal and factual sufficiency: sexual performance by a child

In his third supplemental point, Appellant argues that the evidence was legally[3] and factually insufficient to convict Appellant of sexual performance by a child. Appellant argues that the evidence is factually insufficient to support his conviction because K.R. made no outcry until a year and a half after the sexual assault; police found photos of K.R. among Appellant's possessions, but none depicted K.R. in a state of nudity; and if photographs of K.R. in a state of nudity existed, they would have been found in Appellant's meticulous computer filing system.

█ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State,* 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

█ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *See Zuniga v. State,* 144 S.W.3d 477, 481 (Tex. Crim.App.2004). The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 484. We are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses. *Id.* at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We may not substitute our judgment for the fact finder's. *Zuniga,* 144 S.W.3d at 482.

Section 43.25 of the penal code defines the offense of sexual performance by a child. TEX. PENAL CODE ANN. § 43.25 (Vernon Supp.2005). "A person commits an offense if, knowing the character and conduct thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." *Id.* § 43.25(b). "Sexual conduct" means, among other things, lewd exhibition of the genitals or any portion of the female breast below the top of the areola. *Id.* § (a)(2). The legislature has not defined "lewd exhibition."

█ The fact that police found no photographs of K.R.'s breasts or genitals among Appellant's possessions is not relevant to the crime for which he was indicted

---

**3.** Appellant's entire argument on legal insufficiency is: "Appellant argues the evidence is legally insufficient."

and convicted. Count IV of the indictment alleged that Appellant intentionally or knowingly induced K.R. to engage in a lewd exhibition of her genitals. Recording the lewd exhibition of a minor's genitals on film or other media is not an element of the offense.[4] We also note that nothing in section 43.25 suggests that the exhibition induced by the accused must be for the benefit of a third person as opposed to the accused himself. Therefore, whether Appellant photographed or attempted to photograph K.R.'s genitals, and the fact that police found no photographs of her genitals, is not relevant to a sufficiency analysis.

With regard to the passage of time between the sexual conduct and K.R.'s outcry, the implication of Appellant's argument is that the delay suggests that K.R. fabricated the accusation. We defer to the jury's determination and evaluation of K.R.'s credibility and demeanor. K.R. testified in detail about the sexual assault and the manner in which she was posed when Appellant photographed or appeared to photograph her nude body. Considering all of the evidence in a neutral light, the jury was rationally justified in finding beyond a reasonable doubt that Appellant knowingly or intentionally induced K.R. to engage in a lewd exhibition of her genitals with knowledge of the character and conduct of that exhibition.

Reviewing the evidence in the light most favorable to the verdict, we hold that it is legally sufficient to support the verdict. We hold that the evidence, viewed in a neutral light, is also factually sufficient to support the jury's verdict. We therefore overrule Appellant's third supplemental point.

### F. Legal and factual sufficiency: indecency with a child

In his fourth supplemental point, Appellant argues that the evidence was legally[5] and factually insufficient to support his conviction for indecency with a child arising from the incident when he held K.R. on his lap on the school bus.

A person commits the offense of indecency with a child if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003). "Sexual contact" includes any touching of any part of a child's body, including touching through clothing, with any part of the genitals of a person. *Id.* § 21.11(c)(1).

Appellant argues that the evidence is factually insufficient to convict him of indecency with a child because K.R., a child, was the sole witness; other children who rode on K.R.'s bus said they never saw her sit on Appellant's lap; one child testified that she saw K.R. sit on Appellant's leg but not his lap; in her first three interviews with police, K.R. did not mention that Appellant put her hand on his penis; and Appellant's belly protruded over his lap, he suffered from diabetes, and he had trouble ejaculating. We will consider each of these points in turn.

With regard to Appellant's first argument, the uncorroborated testimony of a

---

4. We note that the definition of sexual "performance" includes photographs, but Appellant's indictment falls under the definition of "sexual conduct," which does not include or require photographs. *See* § 43.25(2), (3).

5. Again, Appellant's argument on legal sufficiency is a single sentence: "Appellant argues the evidence was legally insufficient in that no rational finder of fact could have found Appellant guilty by [sic] a reasonable doubt."

child complainant is sufficient to support a conviction under penal code chapter 21. TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005). Indecency with a child is a chapter 21 offense. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003). Therefore, K.R.'s uncorroborated testimony is sufficient to support Appellant's conviction, even though she is a child. To the extent that age can be a factor in assessing a witness's credibility, we defer to the jury's assessment of K.R.'s credibility. *See Zuniga*, 144 S.W.3d at 481.

The testimony of other students on K.R.'s bus who did not see K.R. sit on Appellant's lap is another factor in assessing K.R.'s credibility, and we must again defer to the jury.

As for Appellant's fourth point, the record reflects that K.R. did not describe Appellant's conduct with specificity until after several interviews with law enforcement over several days. Detective Kizer testified that this was normal behavior for children who have been sexually abused. Again, the implication of this evidence goes to K.R.'s credibility.

With regard to Appellant's weight and health problems, Appellant's medical records reflect that he is 5'11" tall and weighed about 250 pounds in 2001 and 2002. This is some evidence from which the jury might infer that Appellant's stomach protruded over his lap. The record also reflects that Appellant was present in the courtroom throughout his trial, where the jury could presumably observe him seated at the defense table and see for themselves whether the size of his stomach might have precluded the indecent contact alleged by K.R. Weighing against whatever inference the jury might draw from the medical records, of course, is K.R.'s testimony. As for Appellant's diabetic condition and inability to ejaculate: we see no relevant connection between this evidence and the school bus incident. Appellant does not explain its relevance or its effect on factual sufficiency.

Considering the evidence in the light most favorable to the verdict, we hold that it was legally sufficient to support Appellant's conviction for indecency with a child. Considering all of the evidence in a neutral light, and having specifically considered the evidence highlighted by Appellant, we hold that the evidence was also factually sufficient. We overrule Appellant's fourth supplemental point.

## IV. Conclusion

Having overruled all of Appellant's points, we affirm the judgment of the trial court. *See* TEX.R.APP. P. 43.2(a).