

# NUMBER 13-23-00183-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LUIS DELEON JR.,                                                       Appellant,

**v.**

THE STATE OF TEXAS,                                                  Appellee.

## ON APPEAL FROM THE 454TH DISTRICT COURT
## OF MEDINA COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Luis Deleon Jr. appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02. By two issues, Deleon argues that the trial court erred in (1) limiting his cross-examination of a witness, and (2) prohibiting him from subpoenaing jurors for a hearing on his motion for new trial alleging jury misconduct. We affirm.

# I.    BACKGROUND[1]

In a one-count indictment, Deleon was charged with murdering Roger Palacios with a knife. *See id*.[2] The evidence adduced at trial shows that on July 18, 2021, Deleon joined members of his family at a bar in Hondo, Texas. Among the bargoers were Lisa Brieden, Christina Luna, Emilio Luna, TJ Maldonado, Stephanie Santellan, and Deleon. Brieden had been dating Deleon for around five or six years. Christina and TJ are Brieden's children. Christina is married to Emilio and TJ is married to Stephanie. At some point in the night, Deleon walked across the bar at a quick pace toward Palacios, grabbed him, stabbed him three times, and slit his throat. Emilio and TJ grabbed Deleon, at which point TJ picked up the knife which had fallen. Emilio then attempted to aid Palacios, while TJ took the knife to Stephanie. Stephanie and TJ went to her grandmother's house and hid the knife. They ultimately decided that they needed to go back to the bar and cooperate with the police. Stephanie and TJ led the police to the knife, and they provided information which led to Deleon's arrest.

Emilio, TJ, and Stephanie each testified that they personally observed Deleon strike at Palacios. Emilio testified that he saw Deleon "punch at [Palacios] about three times." Stephanie testified that she saw Deleon walk past her and "grab [Palacios] and stab him in the stomach and in the neck." On cross-examination, both Emilio and

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] Deleon was charged under two alternative subsections of the murder statute. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2). The particularities of the subsections are not relevant to this appeal.

Stephanie admitted that they never saw Deleon with the knife in his hand. TJ testified that he directly observed Deleon "take the knife and start stabbing Roger."

On cross-examination, Deleon sought to question TJ regarding some topics he mentioned in an interview with police; namely, his supposed fear of members of a biker gang, the "Banditos." Defense counsel argued that TJ had told police that certain Banditos members were threatening him, and that he had reasons to fear for his safety. As defense counsel stated, "He's afraid of somebody. Therefore[,] my argument, for multiple reasons I think, we have the right to confrontation to get into these facts. [Why it is] relevant, I think it goes to his bias and motive to testify. He's basically looking for somebody to protect him." The trial court ruled against Deleon, concluding that whether TJ is a victim in an unrelated crime was not relevant to the case; but it permitted Deleon to question TJ about pending criminal charges and whether he was a Banditos member.

After both sides rested, the jury found Deleon guilty and assessed punishment at life imprisonment. Deleon filed a motion for new trial alleging juror misconduct and attached an affidavit from bailiff Ramiro Guedea who averred that, while collecting cellphones from the jurors prior to deliberations, he had seen that one of the juror's cellphones "had the name T.J. Maldonado displayed on the screen." After the trial court set Deleon's motion for a hearing, Deleon subpoenaed the jurors in the case. The State filed a motion to quash, and the trial court conducted a hearing on that motion as well. At the hearing, the State informed the trial court that it had reached out to most of the jurors and each of them stated that there was no misconduct and that they had not been contacted by defense counsel to inquire about juror misconduct. The trial court granted the State's motion to quash, concluding that juror testimony was not permissible under

3

Texas Rule of Evidence 606, which only allows a juror to testify during an inquiry into the validity of a verdict if such testimony is "about whether an outside influence was improperly brought to bear on any juror," "or to rebut a claim that the juror was not qualified to serve." TEX. R. EVID. 606(b)(2)(A), (B).

At the motion for new trial hearing, defense counsel stated that because his subpoenas were quashed, he was not going to present any evidence. Guedea testified on behalf of the State. Guedea affirmed that, although he saw TJ's name on one of the juror's cellphones, he could not provide "any specifics as to the context on the phone in which [he] saw the name," and could not say whether he had seen the name as part of an "Internet search or a note or a screen saver." He also confirmed that at no point during or after the trial did any juror approach him regarding any concerns of misconduct. The hearing concluded without a ruling from the trial court, and Deleon's motion was subsequently overruled by operation of law. This appeal followed.

## II. LIMITATION OF CROSS-EXAMINATION

By his first issue on appeal, Deleon argues the court erred and violated his Sixth Amendment right to confront witnesses by limiting his cross-examination of TJ.

### A. Standard of Review & Applicable Law

We review a trial court's decision to admit or exclude evidence, including a trial court's decision to limit cross-examination, for an abuse of discretion. *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)); *Lempar v. State*, 191 S.W.3d 230, 236 (Tex. App.—San Antonio 2005, pet. ref'd). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might

4

disagree.'" *Flowers*, 438 S.W.3d at 103 (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

The Sixth Amendment Confrontation Clause guarantees a defendant the right to cross-examine witnesses. *See* U.S. CONST. amend. VI; *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see also Pointer v. Texas*, 380 U.S. 400, 403 (1965) (holding that the Sixth Amendment applies to the states through the Fourteenth Amendment). We review Confrontation Clause complaints on "on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence." *Lopez*, 18 S.W.3d at 222 (citation omitted). "In weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail." *Id*. (citation omitted). "The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Id*. (citation omitted).

"A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad." *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.) (citing *Carroll v. State,* 916 S.W.2d

5

494, 497 (Tex.Crim.App.1996)). "But this does not mean that a defendant can explore every possible line of inquiry." *Smith*, 352 S.W.3d at 64 (citing *Walker v. State,* 300 S.W.3d 836, 844 (Tex. App.—Fort Worth 2009, pet. ref'd)). "Rather, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* (emphasis in original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

The proponent of evidence concerning a witness's alleged bias or motive "must show that the evidence is relevant." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). "The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Id.* (citing *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998)); *see Irby v. State*, 327 S.W.3d 138, 149–50 (Tex. Crim. App. 2010) ("The reasoning and result in *Carpenter* is in accord with numerous Texas cases in which the cross-examiner failed to show a logical connection between the fact or condition that *could* give rise to a potential bias or motive and the existence of any bias or motive to testify." (emphasis in original)).

**B.  Discussion**

Both in the trial court and on appeal, Deleon has failed to articulate how, precisely, any testimony from TJ regarding fear of Banditos members has any nexus or logical connection to an alleged bias or motive to testify in favor of the State. See *Woods*, 152 S.W.3d at 111. At trial, Deleon argued that such testimony would be relevant because it shows that TJ was "afraid and . . . seeking assistance from [law enforcement] to protect him." According to Deleon, this may mean that TJ would be "looking at the officers to do

6

him a favor," and may be a reason for TJ to testify against Deleon.

Deleon's conclusory assertion that TJ's testimony could be biased because of some undefined benefit he might receive from law enforcement for his testimony is too speculative to demonstrate a logical connection between TJ's fear of Banditos members and any potential bias or motive to testify in favor of the State. *See Irby*, 327 S.W.3d at 149–50. For example, in *Carpenter*, appellant argued that the trial court improperly limited his cross-examination of a State's witness regarding pending federal conspiracy charges. 979 S.W.2d at 633. The *Carpenter* Court concluded:

> Appellant has not established a causal connection or logical relationship between the pending federal charges and the witness'[s] testimony at trial. Appellant does not argue, and the record does not demonstrate, why prosecution by the federal government for theft and conspiracy to possess and distribute controlled substances would tend to show that the witness'[s] testimony in this unrelated state prosecution for tampering with government documents might be biased. Appellant asserts that "[i]t is possible the witness believed his testimony in this case would be of some benefit," but does not provide evidence to support her assertion. . . . Appellant has simply not provided any indication that the pending federal charges were relevant to potential bias or prejudice.

*Id.* at 635.

As in *Carpenter*, Deleon has "not established a causal connection or logical relationship between" TJ's fear of Banditos members and his "testimony at trial." *Id*. Although provided the opportunity to do so, Deleon failed to "provide [any] evidence to support his assertion" that TJ believed his testimony against Deleon "would be of some benefit." *Id*. Consequently, Deleon failed to satisfy his burden to demonstrate the relevancy of his proposed impeachment evidence. *See Woods*, 152 S.W.3d at 111; *Carpenter*, 979 S.W.2d at 634; *Irby*, 327 S.W.3d at 149–50. At most, any relevancy of the proposed line of questioning would have been "marginal," and the trial court could have

7

reasonably concluded that it may confuse the issues. *See Walker,* 300 S.W.3d at 846 ("A trial court has the discretion to limit testimony that may confuse the issues or be only marginally relevant."); *see also* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.").

We hold that the trial court did not abuse its discretion in limiting the cross-examination of TJ concerning his fear of Banditos members. *See Flowers*, 438 S.W.3d at 103; *see also Smith*, 352 S.W.3d at 68 ("Although we are mindful of Appellant's right to pursue all avenues of cross-examination reasonably calculated to expose motive, bias, or interest in a witness to testify . . . we agree with the trial court's determination that Appellant failed to show a logical connection between the evidence of the separate checking account and Moss's alleged bias or motive; at a minimum, the trial court's decision is within the zone of reasonable disagreement."). We therefore overrule Deleon's first issue.

### III. EXCLUSION OF JUROR TESTIMONY

By his second issue on appeal, Deleon contends the trial court erred by quashing the subpoenas issued to jurors to testify at his new trial hearing. We construe this issue to include the matter of whether the trial court erred by allowing the motion for new trial to be overruled by operation of law.

### A. Standard of Review & Applicable Law

We review a trial court's decision to quash a subpoena or to deny a motion for new trial, under an abuse of discretion standard. *See Emenhiser v. State*, 196 S.W.3d 915,

8

921 (Tex. App.—Fort Worth 2006, pet. ref'd); *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). An abuse of discretion occurs only if the decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id*.

The court may not receive evidence of a juror's statement that concerns any incident that occurred during the jury's deliberations, or the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment. TEX. R. EVID. 606(b)(1). However, a juror may testify about whether an outside influence was improperly brought to bear on any juror, or to rebut a claim that the juror was not qualified to serve. *Id*. 606(b)(2)(A), (B). An "outside influence" is something originating from a source outside of the jury room and other than from the jurors themselves. *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012).

To obtain a motion for new trial based on juror misconduct, an appellant is required to allege facts that amount to misconduct "through the affidavit of a juror or another person who was in a position to know the facts." *Prystash v. State*, 3 S.W.3d 522, 537 (Tex. Crim. App. 1999) (citation omitted); *see Prince v. State*, 254 S.W.2d 1006, 1011 (Tex. Crim. App. 1953) ("Where the misconduct was of such a nature that it would be known only by members of the jury, then an affidavit of a juror is proper. But this is not the exclusive method. Where the appellant is unable to secure such an affidavit, it is incumbent upon him to show this, and why, and, further, to show reasonable grounds for believing that such misconduct actually occurred."). "This Court has required something more than a mere allegation of juror misconduct to avoid fishing expeditions by defendants." *Prystach,* 3 S.W.3d at 537 (cleaned up).

Where an appellant fails to show that testimony from jurors would have been

9

permitted by Rule 606, a trial court does not abuse its discretion in quashing subpoenas and denying a motion for new trial or permitting the motion to be overruled by operation of law. *See Anderson v. State*, 665 S.W.3d 743, 758 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) ("After reviewing the juror's affidavit in this case, we find that it addressed only matters which the juror learned during jury deliberations. These matters clearly came from the other jurors and, as such, do not constitute outside influences. Accordingly, the trial court properly quashed the juror affidavit and denied appellant's motion for new trial."); *see also Dunn v. State*, No. 06-96-00026-CR, 1997 WL 271776, at *4 (Tex. App.— Texarkana Jan. 6, 1997, no pet.) (not designated for publication) ("The trial court acted within its discretion when it refused to provide Dunn with a hearing on his motion for new trial and allowed it to be overruled by operation of law.").

**B.      Discussion**

Deleon argues that "[t]he affidavit of the bailiff in this case provided the [trial court] with the basis for allowing the questioning of the entire jury panel regarding any outside influence." He claims that "[t]estimony of the jurors would have shown which juror was researching [TJ]. Further, juror testimony would have revealed any other jurors that had knowledge of the outside influence, and crucially, if that outside influence made its way into jury deliberations."

Contrary to Deleon's assertion, neither Guedea's affidavit nor his testimony shows that an "outside influence" was at play during deliberations. *See* TEX. R. EVID. 606(b)(2)(A). Guedea only stated that he saw the name of a witness on a cellphone screen, but he was unable to provide any other context, and did not allege that the name as he saw it was indicative of any kind of outside research. As the trial court noted, a

10

name appearing on a cellphone screen is consistent with a juror taking notes on the phone and does not indicate that a juror obtained any information that originated from a source outside of the jury room. *Cf. McQuarrie*, 380 S.W.3d at 154 (concluding that appellant had sufficiently alleged an "outside influence" where juror affidavits supported that "internet research occurred outside of the jury room and outside of deliberations—the juror conducted a private investigation at her home during an overnight break," and noting that the "information obtained originated from a source on the internet, a source other than the jurors themselves").

Even assuming that the mere presence of a witness's name on a cellphone screen supports a finding of "outside influence," Deleon has also failed to satisfactorily allege that this outside influence "was improperly brought to bear on any juror." TEX. R. EVID. 606(b)(2)(A); *see Colyer*, 428 S.W.3d at 129 ("An 'outside influence' is problematic only if it has the effect of *improperly* affecting a juror's verdict in a particular manner—for or against a particular party." (emphasis in original)); *Ryser v. State*, 453 S.W.3d 17, 42–43 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (concluding that the trial court did not abuse its discretion in denying motion for new trial because, although a juror's use of a dictionary during deliberations involved an "outside influence," appellant could not show that this outside influence was "improperly brought to bear upon any juror" sufficient to show harm). For example, in *McQuarrie*, the appellant's motion for new trial included affidavits from two jurors, one of whom explicitly stated that the online research conducted by a third juror "changed his mind" and "that the information had changed the mind of the third juror." 380 S.W.3d at 148 (concluding that the trial court abused its discretion in excluding juror testimony which should have been allowed pursuant to Rule 606(b)(2)(A)).

11

We further note that, despite being provided the opportunity to do so, Deleon did not obtain any supporting affidavits for his motion for new trial from any jurors, nor did he attempt to explain to the trial court why he failed to obtain such affidavits. *See Prystash*, 3 S.W.3d at 537; *Prince*, 254 S.W.2d at 1011; *see also Dunn*, No. 06-96-00026-CR, 1997 WL 271776, at *3 ("The key consideration is whether the affidavits provide the court with reasonable grounds for believing that juror misconduct took place. . . . [Defense counsel]'s supporting affidavits focus on a single juror despite the fact that other jurors were in a position to know what transpired during jury deliberations. [Defense counsel] makes no reference in his affidavits to attempts to either obtain supporting affidavits from other jurors or interview other jurors about [misconduct] allegations."). [3] Consequently, Deleon's motion for new trial fails to amount to more than a "mere allegation" of juror misconduct. *Prystach,* 3 S.W.3d at 537; *see Prince*, 254 S.W.2d at 1011 ("[Properly alleging jury misconduct] is not done by a motion which tells the trial court, 'I think misconduct has occurred and, though unable to verify it, I want to examine the jury to determine whether or not such did occur.'").

Because Deleon has not shown that any juror testimony would have been permitted under Rule 606, we conclude that the trial court did not abuse its discretion in quashing his juror subpoenas or allowing his motion for new trial to be overruled by operation of law. *See Emenhiser*, 196 S.W.3d at 921; *Colyer*, 428 S.W.3d at 122; *Anderson*, 665 S.W.3d at 758. We overrule Deleon's second issue.

---

[3] At the hearing on the State's motion to quash, the State informed the trial court that it had reached out "to all but four of the jurors," all of whom denied any juror misconduct, and the State noted that those jurors had not been contacted by defense counsel. When the trial court asked defense counsel if he had been in contact with any juror who could provide an affidavit, defense counsel argued that such conversations with jurors could not be disclosed because they were "attorney work product."

## IV.    Conclusion

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
15th day of August, 2024.

13