

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00203-CR

ELIGAH DARNELL                                          APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

### MEMORANDUM OPINION[1]

----------

Eligah Darnell brings thirty-seven points[2] challenging his conviction for failure to comply with the sex offender registration requirements by failing to notify the Fort Worth police department at least seven days before moving to a

---

[1]*See* Tex. R. App. P. 47.4.

[2]Because appellant raises so many points, we will only discuss relevant background facts within our discussion of each point.

new address.  *See* Tex. Code Crim. Proc. Ann. arts. 62.051(a) (West Supp. 2011), .102(a) (West 2006).  We affirm.

## Speedy Trial

In his first point, appellant contends that his speedy trial rights under the United States and Texas Constitutions were violated.

The Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee an accused the right to a speedy trial.  U.S. Const. amend. VI; Tex. Const. art. I, § 10; *Murphy v. State*, 280 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd).  Texas courts use the same test to analyze claims of a denial of this right under the federal and state constitutions.  *Murphy*, 280 S.W.3d at 450.  Thus, we analyze speedy trial claims on an ad hoc basis by weighing and then balancing the four *Barker v. Wingo* factors:  1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused.  407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *Murphy*, 280 S.W.3d at 450.  While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice.  *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Murphy*, 280 S.W.3d at 450.  The defendant's burden of proof on the latter two factors varies inversely with the State's degree of culpability for the delay.  *Doggett v. United States*, 505 U.S. 647, 657, 112 S. Ct. 2686, 2693 (1992); *Murphy*, 280 S.W.3d at 450.  Thus, the greater the State's bad faith or official negligence and the longer

2

its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008); *Murphy*, 280 S.W.3d at 450–51.

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Doggett*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1; *Murphy*, 280 S.W.3d at 451. There is no set time element that triggers the analysis, but the court of criminal appeals has held that a delay of four months is not sufficient while a seventeen-month delay is. *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983); *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973), *cert. denied*, 415 U.S. 959 (1974); *Murphy*, 280 S.W.3d at 451. Once the *Barker* test is triggered, courts must analyze the speedy trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192; *Murphy*, 280 S.W.3d at 451. No one factor is either a necessary or sufficient condition to the finding of a deprivation of the speedy trial right; instead, the four factors are related and must be considered together along with any other relevant circumstances. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192; *Murphy*, 280 S.W.3d at 451. Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Murphy*, 280 S.W.3d at 451; *see Barker*, 407 U.S. at 534–35, 92 S. Ct. at 2192.

3

In September 2006, appellant was indicted in the 213th District Court in cause number 1037163D for failing to notify the Fort Worth police department within seven days after moving. After appellant appealed the denial of a pretrial motion to dismiss to this court,[3] the State reindicted him in the 432nd District Court in cause number 1177732R on October 26, 2009. Appellant filed a speedy trial motion in cause number 1177732R on November 10, 2009.[4] The State reindicted appellant a second time in cause number 1197286R on April 22, 2010.[5] In a hearing on appellant's pretrial motions in that cause number, he testified that he was arrested on September 14, 2006 and detained until October 4, 2006, when he was released on bond. He was rearrested on June 29, 2007 and incarcerated for another eleven months with a hold on his bond.[6] According to appellant, he was prejudiced because a key witness—whom he admitted on cross-examination was Pete Gilfeather—had passed away in 2009. But

---

[3]Appellant filed his notice of appeal on June 27, 2008; we affirmed the conviction on April 9, 2009, and the mandate from this court's opinion was issued on October 16, 2009.

[4]Appellant had filed a prior pro se Motion For Speedy Trial in cause number 1037163D on October 5, 2007, while he was represented by counsel. It appears that the trial court did not rule on this motion.

[5]The record does not indicate why the case was reindicted for a second time, but the third indictment adds a paragraph indicating that the original indictment in cause number 1037163D was filed September 18, 2006 and was pending as of April 23, 2010.

[6]The trial court reminded appellant that it could take judicial notice of its file. The record in cause number 1037163D shows that on June 2, 2008, the trial court set appellant's bond at $25,000.

4

appellant also admitted on cross that Gilfeather did not have any information as to whether appellant had been living at a certain place in 2006 or whether he had fulfilled his reporting requirements with the Fort Worth police department. Appellant mentioned something about Gilfeather's having previously presided over a misdemeanor unlawful carrying of a weapon case that was erroneously enhanced to a felony, but he never clearly explained why Gilfeather's testimony was necessary to his defense.[7]

The case against appellant had been pending for a little over a year when he filed his first motion for speedy trial and over three years when he filed his second motion. Although the State did not articulate a reason for the delay, at least part of the delay—from June 2008 to October 2009—is attributable to appellant's appeal of the trial court's denial of his motion to dismiss. In addition, the record shows that two of appellant's appointed lawyers filed motions to withdraw on the grounds that appellant's actions had rendered representation "unreasonably difficult." One of the lawyers said that appellant had requested that he file inappropriate pretrial writ applications and threatened him with the filing of a grievance if he refused to file those writ applications. By the date of trial, appellant was represented by his third appointed counsel[8] and had

---

[7]The record contains a copy of a judgment in an unlawful carrying of a weapon case that was signed by Judge Gilfeather sentencing appellant to two hundred days' community supervision.

[8]Appellant had also been appointed a fourth counsel for standby purposes during pretrial.

represented himself pro se for a time. Even while represented by counsel, appellant continued to file numerous pro se motions.

As prejudice, appellant cited Gilfeather's death while this case was pending. But appellant failed to articulate why Gilfeather was important to the pending case. The State introduced evidence at punishment showing that appellant's probation for the unlawful carrying of a weapon at a school conviction was revoked in 1989. Gilfeather was not the trial judge or appellant's counsel for the revocation. Moreover, the unlawful carrying of a weapon offense was mentioned by the State only in passing during closing and in conjunction with several other prior offenses, including the indecency with a child conviction for which appellant was subject to registration.

Appellant has presented no evidence of prejudice as a result of the delay, other than the delay itself, a large part of which was attributable to appellant's own actions.[9] Thus, while some of the *Barker* factors, such as the length of delay, may weigh in appellant's favor, we cannot conclude that the evidence shows that his rights to a speedy trial were violated such that he is entitled to relief.[10] We overrule his first point.

---

[9]In a postsubmission brief, appellant claimed that he was prejudiced because the State would not have been able to use statements he made to his bond caseload officer against him had he been tried earlier. However, as shown below, the State had ample other evidence upon which to convict appellant.

[10]Appellant complains within his first point that he was held without a bond he could afford for more than ninety days after the State announced ready. *See* Tex. Code Crim. Proc. Ann. art. 17.151 (West Supp. 2011). However, this court

6

**Motion to Quash**

In his second and third points, appellant claims that the trial court erred by denying his motion to quash and "Collateral Estoppel Writ of Habeas Corpus." Although the motions are not exactly the same as the motion that was at issue in this court's prior opinion in *Ex parte Darnell*, No. 02-08-00229-CR, 2009 WL 976021, at *1 (Tex. App.—Fort Worth Apr. 9, 2009, pet. ref'd) (mem. op., not designated for publication), both motions raise the same arguments that this court has already considered and rejected: that the prosecution against appellant is barred because (a) the issue of whether his indecency with a child conviction is a "sexually violent offense" has already been litigated,[11] (b) subjecting him to the registration and reporting requirements constitutes impermissible ex post facto punishment, and (c) according to appellant, he did report when he was supposed to. *See id.* For the reasons set forth in our prior opinion and because appellant is not entitled to a pretrial evidentiary hearing on the merits of the charge pending against him, we conclude and hold that the trial

---

has previously addressed and rejected appellant's complaint that the trial court abused its discretion by denying him a reduction in bail. *Ex parte Darnell*, No. 02-08-00229-CR, 2009 WL 976021, at *1 & n.7 (Tex. App.—Fort Worth Apr. 9, 2009, pet. ref'd) (mem. op., not designated for publication).

[11]Appellant couches part of this argument in terms of being eligible for mandatory supervision parole; however, his argument is still that his indecency conviction should be categorized based on a prior trial court's decision in 1989 (of which there is no evidence) rather than the mandatory provision in article 62.001(6)(A) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 62.001(6)(A) (West Supp. 2011); *Ex parte Darnell*, 2009 WL 976021, at *1.

court did not abuse its discretion by refusing to quash the indictment and dismiss the case. *Id.; see State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex. Crim. App. 1994) (op. on reh'g). We therefore overrule appellant's second and third points.

**Quashing of Appellant's Subpoenas**

Appellant claims in his fourth and fifth points that the trial court erred by quashing subpoenas for Timmie White, who had represented appellant in his prior indecency with a child conviction and an unlawful carrying of a weapon conviction, and Stuart Jenkins, a parole officer from the Texas Department of Criminal Justice.

Criminal defendants have a right to compulsory process for obtaining witnesses. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd). But the right to compulsory process is not absolute; defendants have the right to secure only the attendance of witnesses whose testimony would be both material and favorable to the defense. *Emenhiser*, 196 S.W.3d at 921; *see Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998). To exercise this right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 528; *Emenhiser*, 196 S.W.3d at 921. The mere belief that a witness would support the defense's case is insufficient to establish materiality. *Emenhiser*, 196 S.W.3d at 921. Moreover, the right to compulsory process is dependent upon an accused's initiative, and the nature of

8

the right requires that its effective use be preceded by "deliberate planning and affirmative conduct" by the defendant. *Id.*

We review a complaint that the trial court improperly quashed a subpoena for an abuse of discretion. *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987); *Emenhiser*, 196 S.W.3d at 921. Likewise, questions regarding limitations on the right to compulsory process are within the trial court's discretion. *Emenhiser*, 196 S.W.3d at 921.

Appellant wanted to call White and Jenkins to testify about his theory that a prior trial court had found that his indecency conviction was not classified as a sexually violent offense under the mandatory supervision statute so that he could not be charged with the failure to report offense. *See* Tex. Code Crim. Proc. Ann. art. 62.001(6)(A) (West Supp. 2011). However, because this court has already rejected these arguments in its opinion on appellant's pretrial application for writ of habeas corpus, we conclude and hold that the trial court did not abuse its discretion by quashing the subpoenas because appellant did not show that White's and Jenkins's testimony was material and favorable to him. *See Ex parte Darnell*, 2009 WL 976021, at *1. Thus, we overrule appellant's fourth and fifth points.

**Motion for New Trial**

In his sixth point, appellant argues that the trial court erred by denying him a hearing on his motion for new trial. Although appellant raised the issues of

9

ineffective assistance and the need for new evidence to prove his innocence,[12] he did not support his motion with an affidavit or unsworn declaration verifying the matters he contends are not determinable from the record. Thus, the trial court did not abuse its discretion by refusing to hold a hearing on appellant's motion for new trial. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) ("Thus we require, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim."); *Bahm v. State*, 219 S.W.3d 391, 393–94 (Tex. Crim. App. 2007). We overrule appellant's sixth point.

### Sufficiency of the Evidence

In his eighth and thirty-sixth points, appellant contends that the evidence is insufficient to support his conviction and that he is actually innocent of the indecency with a child conviction for which he was required to report.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*,

---

[12]Appellant contends that SBC phone records, which were not introduced at trial, would have shown that he made phone calls to his parole officer from 2800 Lena, the address at which he was supposed to be living; however, this evidence does not conclusively prove that appellant was actually living at 2800 Lena at the time he made the phone calls.

443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We have already determined that appellant's prior indecency conviction was reportable. *Ex parte Darnell*, 2009 WL 976021, at *1. Here, the State adduced evidence that although appellant had reported his address to the Fort Worth police as 2800 Lena in Fort Worth, Detective Ufkes, a Fort Worth police officer, visited the address twice in August 2006 and was unable to find appellant. The second time Detective Ufkes went to the address, he spoke to appellant's sister, Teresa Wyatt, who lived there; she gave a sworn statement saying that appellant did not live at 2800 Lena. Wyatt confirmed at trial that appellant did not live at 2800 Lena and that he had never lived there but had received mail there. Detective Tracy Tillerson, the officer to whom appellant was supposed to report, testified that appellant did not inform her that he was living anywhere other than 2800 Lena. According to the testimony of Kristen Ayala, a probation officer to whom appellant reported when he was released on bond, appellant told her that he had been living at 729 Glen Garden in Fort Worth since April 2006. Even though appellant's brother testified that appellant was living at 2800 Lena in 2006, the jury was entitled to disbelieve his testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). The jury was likewise entitled to believe Wyatt's testimony that appellant had never lived at 2800 Lena even though she later admitted that on March 16, 2006, she had

11

signed a form for the Texas Department of Human Services verifying that appellant was living at 2800 Lena. Thus, we conclude and hold that the evidence is legally sufficient to uphold appellant's conviction. We overrule appellant's eighth and thirty-sixth points. *See State ex rel. Abbott v. Young*, 265 S.W.3d 697, 706 (Tex. App.—Austin 2008, pet. denied) (distinguishing "actual innocence" in habeas context from sufficiency of the evidence in direct appeal context).

## Alleged Errors in Reporter's Record

In his ninth point, appellant challenges what he claims are two errors in the reporter's record and asks this court to abate the appeal for a correction of the reporter's record.

Appellant claims that the following prosecutor's statement during closing argument was omitted: "Sgt. Hensley told me he checked the TCIC[13] and found that the defendant never worked at Whataburger." The record before this court shows that the prosecutor said the following: "Defense counsel will have you believe [appellant] was working. Sergeant Hensley knew that wasn't true, because there wasn't anything from the Texas Workforce Commission. He couldn't find any employment. So I don't know where this Whataburger is coming from. He's not working." Sergeant Hensley was the Fugitive Unit Task

---

[13]TCIC is a statewide criminal information database used by law enforcement agencies. *Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002).

Force officer who arrested appellant for the instant offense. When asked how he went about finding someone with a pending warrant, he testified:

> We get his information, his date of birth, his full name, any family members, and then . . . before we leave, . . . we kind of put a packet together. We run certain, like, Texas Workforce Commission, if they're working, we check addresses, we have crime analysts that assist us with that kind of stuff.

Sergeant Hensley did not testify that appellant was not working; instead, he testified that when he finally arrested appellant, he was at a barbecue restaurant owned by a relative. Although the prosecutor's statement as reflected in the record appears to be an inaccurate statement of Sergeant Hensley's testimony, whether the prosecutor told the jury that Sergeant Hensley checked with TCIC or the Texas Workforce Commission is irrelevant to whether appellant was actually living at 2800 Lena. It is undisputed that appellant was not present at 2800 Lena when a Fort Worth police officer went looking for him in August 2006; whether appellant was absent because he was at work, simply not home, or did not actually live there was the issue for the jury to resolve, not whether the officer who finally arrested appellant verified through some database that appellant was not working.

Appellant also alleges that the reporter left out testimony from Ayala that appellant's stepbrother told her that appellant was not living at 729 Glen Garden. Although this information is in Ayala's notes, which are included in the State's open file that was provided to appellant and included in the reporter's record from a pretrial hearing, there is no indication in the record that Ayala so testified before

13

the jury. Ayala did testify that when she visited 729 Glen Garden, appellant was not there, and she spoke to his stepbrother.[14] Appellant raised this challenge to the record in a presubmission motion before this court, and in response, the reporter certified that Ayala's testimony was included in the reporter's record provided.

Because the first alleged inaccuracy is not relevant to the issues at trial or on appeal and because even if the jury heard testimony from Ayala that appellant's stepbrother told her appellant was not living at 729 Glen Garden, any error in the admission of that evidence would be harmless, abatement would not serve any purpose here; moreover, we have already denied appellant's objections to the record in a presubmission order.[15] *See* Tex. R. App. P. 44.2(b). We overrule his ninth point.

---

[14]In his closing argument, *the prosecutor* characterized this testimony as follows: "729 Glen Garden. She goes there, she talks to his stepbrother, half-brother, he don't live here."

[15]Appellant also claims that Ayala testified at guilt-innocence that he tested positive for THC. The record shows that Ayala testified at punishment that appellant told her while he was released on bond that he would have tested positive for marijuana. Even if this testimony is misplaced in the record, we would hold that the testimony was harmless in light of our review of the entire record.

14

**Ineffective Assistance**

In his seventh and tenth through thirty-fourth points, appellant alleges that his counsel provided ineffective assistance at trial.[16]

**Standard of Review**

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the

---

[16]In his seventh point, appellant complains that counsel failed to present eight items of evidence to the jury that appellant contends would prove that he is actually innocent. However, appellant failed to file a bill of exception as required by the appellate rules. *See* Tex. R. App. P. 33.2. Therefore, we may not consider these items because they are not included in the appellate record. *Ramirez v. State*, 104 S.W.3d 549, 550–51 & n.9 (Tex. Crim. App. 2003); *Booth v. State*, 499 S.W.2d 129, 135 (Tex. Crim. App. 1973).

time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must

16

be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Sexually Violent Offense**

Appellant's tenth and eleventh points allege that counsel was ineffective for failing to request a lesser included offense and for failing to cross-examine a witness; both points are based on appellant's contention that his indecency conviction is not a sexually violent offense and therefore he was not required to report anymore. However, as we explained in our prior opinion, the legislature has defined appellant's indecency conviction as both a reportable conviction and a sexually violent offense for which appellant is subject to lifetime registration unless he applies for early termination through the trial court. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5)(A), (6)(A) (West Supp. 2011), 62.101(a) (West Supp. 2011), 62.401–.408 (West 2006 & West Supp. 2011). Nothing in the record shows that appellant's duty to report had terminated. Thus, we overrule his tenth and eleventh points.

**SBC Phone Records**

In his twelfth point, appellant contends counsel was ineffective for failing to subpoena a Detective Benson who would have testified that appellant called him from 2800 Lena a short time after Detective Ufkes left the residence. Appellant also contends in that point that counsel should have requested a continuance to obtain SBC phone records, which would confirm Detective Benson's testimony and also show that Detective Ufkes went by 2800 Lena at 6:35 a.m. on August 7

17

rather than 12:10 p.m. Neither the phone records nor Detective Benson's proposed testimony are in the appellate record; moreover, whether appellant called someone from 2800 Lena and at a different time from when Detective Ufkes testified that he visited does not show that appellant was actually living at that address at the time. Thus, we overrule appellant's twelfth point.

**Failure to Call Sendria Ford**

In his thirteenth point, appellant contends his counsel was ineffective for failing to call Sendria Ford, whom the defense had subpoenaed, because appellant contends she could have verified that he was working at Whataburger and that she had records verifying his work status at Whataburger. He also contends that through Ford, he could have shown that he was working nights at Whataburger (thus, presumably explaining why he was not at 2800 Lena at 6:35 a.m.). However, what Ford would have testified to or what her records would show is not in the record, and whether appellant was working at Whataburger, or somewhere else, or not working at all, does not show whether he was living at 2800 Lena at the time. We overrule appellant's thirteenth point.

**Alleged Violation of Motion in Limine**

In his fourteenth point, appellant complains that counsel was ineffective for failing to object to the prosecutor's opening statement during guilt-innocence, which appellant claims violated a pretrial motion in limine by discussing extraneous bad acts. However, the part of the opening statement about which appellant complains is limited to appellant's failure to register, being arrested for

18

failure to register, and being on bond for failure to register, all of which are related to the offense charged in the indictment. Accordingly, counsel was not ineffective for failing to object; we overrule appellant's fourteenth point.

**Consolidation**

In his fifteenth point, appellant claims that counsel was ineffective for failing to object to the State's "consolidated evidence from cause 1197285 into the trial of cause 1197286." The record shows that although the State moved to consolidate the two cases, the trial court denied that motion. Nothing in the record indicates what appellant was charged with in number 1197285, but it appears to be another failure to report offense. Appellant does not specify what evidence counsel should have objected to, but he does argue that Ayala's testimony about him telling her he had lived at 729 Glen Garden since April 2006 is extraneous because it pertains to the charge in 1197285. However, even if Ayala's testimony is relevant to the charged offense in 1197285, it is likewise relevant to the charged offense in this appeal; thus, we overrule appellant's fifteenth point.

**State's Exhibits 5 and 6**

In his sixteenth point, appellant contends that counsel was ineffective for failing to object to testimony by Ayala and evidence admitted through her testimony. Specifically, appellant complains that counsel should have objected to State's exhibit 5, a form entitled, "Tarrant County Community Supervision and Corrections Department Probationer Data Sheet," that appellant filled out for

19

Ayala in his own handwriting while he was released on bond and which indicates that his address was 729 Glen Garden. Appellant contends counsel should have objected to the admission of this document because it is not admissible under the rule 803(8)(B) hearsay exception because it involved "matters observed by police officers and other law enforcement personnel." Tex. R. Evid. 803(8)(B). However, the form is not hearsay under rule 801(e)(2)(A) and thus was admissible. Tex. R. Evid. 801(e)(2)(A) (providing that a defendant's own statements when offered against him are not hearsay); *Stevenson v. State*, 304 S.W.3d 603, 616–17 (Tex. App.––Fort Worth 2010, no pet.); *Logan v. State*, 71 S.W.3d 865, 869 (Tex. App.—Fort Worth 2002, pet. ref'd) ("The defendant and the State . . . are party opponents."). Accordingly, we overrule appellant's sixteenth point.

In his seventeenth and eighteenth points, appellant contends that counsel was ineffective for failing to object to State's exhibits 5 and 6 under rule 403 and 404(b). Exhibit 6 is the second page of the form that appellant filled out in compliance with his bond conditions entitled "Information On People You Know." According to appellant, these documents are substantially more prejudicial than probative because they do not contain his signature or Ayala's signature, they do not show a date or time, and they do not indicate that appellant himself completed them. However, Ayala testified that appellant filled out the forms in his own handwriting and that she went over each of them with him carefully. Counsel was able to cross-examine her about the documents. The documents

20

contained probative information and were more likely to assist the jury on the issues rather than confuse or inflame it. Accordingly, we conclude and hold that counsel was not ineffective for failing to object to State's exhibits 5 and 6 on rule 403 grounds. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (listing factors involved in rule 403 balancing test). We overrule appellant's seventeenth point.

Appellant contends that counsel should have objected to exhibits 5 and 6 under rule 404(b) because Ayala later testified that she visited 729 Glen Garden, where appellant had indicated he had lived since April 2006, and appellant was not there. She also testified that when she asked him about it, he told her he moves around to be near work. Appellant says that this evidence shows the documents were admitted solely to prove character conformity. However, Ayala's later testimony about his not being at 729 Glen Garden and his telling her that he moved around a lot occurred at punishment. There was no similar testimony from Ayala at guilt-innocence; thus, exhibits 5 and 6 were admitted at guilt-innocence as evidence pertinent to the charged offense, not as evidence of extraneous acts. Thus, rule 404(b) was not applicable, and counsel was not ineffective for failing to object to the admission of exhibits 5 and 6 under rule 404(b). We overrule appellant's eighteenth point.

**Ayala's Testimony**

In his nineteenth point, appellant contends that counsel should have objected to Ayala's testimony about his telling her he had lived at 729 Glen

21

Garden since April 2006 as extraneous offense evidence. However, this evidence is probative of whether appellant was living at 2800 Lena in August 2006 when Detective Ufkes visited; thus, it was not extraneous offense evidence. *See* Tex. R. Evid. 404(b). We overrule appellant's nineteenth point.

In his twentieth point, appellant contends counsel was ineffective for failing to request an instruction at guilt-innocence that all extraneous offenses must be proven beyond a reasonable doubt. Appellant contends that evidence he told Ayala that he had been living at 729 Glen Garden since April 15, 2006 is an extraneous act for which counsel should have asked for an appropriate jury instruction. However, the State did not use this evidence as proof of character conformity; the State's contention at guilt-innocence was that appellant's assertion that he had been living at 729 Glen Garden was truthful and that appellant either lied when he said his address was 2800 Lena, or he moved and did not inform the police. Thus, this is not the type of extraneous bad act evidence for which a beyond a reasonable doubt instruction is required. We overrule appellant's twentieth point.

In his twenty-first point, appellant contends that he was denied effective assistance of counsel by the cumulative effect of counsel's failure to object to Ayala's testimony combined with cross-examination by defense counsel that elicited extraneous offenses. Ayala testified at punishment that appellant told her he moves around a lot to live where he is working. According to appellant, this testimony misled the jury to believe that he was moving around without

22

complying with registration requirements; thus, counsel should have objected because evidence appellant attached to his brief—which is not part of the appellate record—shows that Ayala knew he was in compliance with registration requirements each time he moved. Appellant contends that counsel should have objected because Ayala's testimony was misleading and unfairly prejudicial. *See* Tex. R. Evid. 403. Appellant also contends that counsel elicited further testimony regarding the misleading extraneous offenses.

At punishment, the State elicited testimony from Ayala that when, in May 2007, she went to visit appellant at 729 Glen Garden, he was not there. When appellant next reported to her, she confronted him about whether he lived there, and he told her that he moves around to live close to where he works. She also said that as his bond caseload officer, she was concerned because he had trouble reporting to her and thus complying with his bond conditions. On cross-examination, counsel elicited testimony from Ayala that appellant had told her he was trying to find a job. Counsel asked Ayala whether sex offenders often have to move because they have difficulty finding jobs; she said she did not know. When counsel asked whether Ayala knew that appellant was seeking employment in the food and beverage industry, she said that appellant had reported to her that he was working at Mom's Barbecue but that appellant's stepbrother told her appellant was not working there. But the stepbrother also said he sometimes saw appellant at that restaurant.

23

Nothing about Ayala's testimony is misleading. She simply testified as to what appellant told her as part of his bond conditions and what her investigation uncovered. Although counsel did elicit testimony from her that appellant may have lied when he told her he was working at Mom's Barbecue, this evidence is no more damaging than other evidence that appellant lied to Ayala about where he was living. We conclude and hold that counsel was not deficient for failing to object to Ayala's testimony or for his cross-examination of Ayala, which did put before the jury the idea that sex offenders may have trouble finding places to live convenient to employment. *See* Tex. R. Evid. 403; *Gigliobianco*, 210 S.W.3d at 641–42. We overrule appellant's twenty-first point.

Appellant claims in his twenty-ninth point that counsel was ineffective for failing to object to Ayala's testimony at punishment that appellant's stepbrother told her appellant did not live at 729 Glen Garden and did not work at Mom's Barbecue. According to appellant, his stepbrother's statements are testimonial and not admissible under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). Contrary to appellant's assertions, Ayala did not testify that appellant's stepbrother told her appellant did not live at 729 Glen Garden. She said that she had visited that address, that appellant was not there, that she later questioned appellant about it, and that he told her he moved around to be near work. She also testified that she was concerned "[b]ecause the address he gave me of 729, he did not live there." In an attempt to mitigate the effect of this testimony, counsel questioned Ayala about whether sex offenders often have trouble finding

24

work and have to move around a lot. Ayala testified about the stepbrother telling her that appellant did not work at Mom's Barbecue in response to counsel's question as to whether she knew if appellant was attempting to find a job in the food and beverage industry. However, in that same line of questioning, Ayala testified that appellant was in the process of getting a job at Luby's.

Even if the stepbrother's statement about appellant not working at Mom's Barbecue was testimonial, it was redundant in light of other evidence that appellant was not truthful with Ayala. Moreover, it was elicited at punishment and therefore was not "considered as substantive evidence of guilt and character conformity in violation of [rule] 404(b)," as asserted by appellant. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2011) (providing that at punishment trial court may consider any evidence relevant to sentencing including character of defendant). We overrule appellant's twenty-ninth point.

**Alleged Violation of Pretrial Discovery Orders**

In his twenty-second point, appellant claims counsel was ineffective for failing to object to Ayala's testimony as violative of the reasonable notice requirement of rule 404(b). Tex. R. Evid. 404(b). The record contains notices from the State dated fifteen days before trial, in cause numbers 1197285 and 1197286, indicating that Ayala would testify about appellant's telling her he was living at 729 Glen Garden, that Ayala went to that address and appellant's stepbrother told her appellant was not living there, and that appellant told her he moves around to live where he is working. *See Martin v. State*, 176 S.W.3d 887,

25

900–01 (Tex. App.—Fort Worth 2005, no pet.). Thus, no objection was necessary. We overrule appellant's twenty-second point.

Appellant contends in his twenty-third point that his counsel was ineffective for failing to object to the State's violation of a pretrial discovery order when the State impeached appellant's witness with prior felony convictions. The Motion for Disclosure of Impeaching Information that the trial court granted compelled the State to provide such information only for witnesses that the State intended to call; thus, it did not apply to appellant's witnesses. We overrule appellant's twenty-third point.

**Remarks and Questioning by the State**

In his twenty-fourth point, appellant challenges counsel's effectiveness for failing to object to the following argument by the prosecutor at guilt-innocence:

> I mean, honestly, why do we care where Mr. Darnell's at? Because he's a sex offender. He is a convicted sex offender. He's required to by law - - this is his paperwork. His victim was nine years old He abused a child, a nine-year-old girl. He got to go to prison for that. That's why we care.

To prove the offense of failure to register, the State had to prove that appellant had a reportable conviction for which he was required to register. Tex. Code Crim. Proc. Ann. arts. 62.051, .102(a). Thus, the jury already had before it evidence of appellant's conviction for indecency with a child. Although the child's age was not part of the evidence before the jury and not relevant to whether appellant failed to register, counsel might well have strategically decided not to call additional attention to that fact by objecting. Moreover, it is unlikely that the

26

jury was so inflamed by this remark that it decided the case based on it rather than the sufficient evidence supporting conviction. *See In re A.J.G.*, 131 S.W.3d 687, 692–93 (Tex. App.—Corpus Christi 2004, pet. denied) (discussing remarks calculated to appeal to public sentiment or community outrage). We conclude and hold that counsel was not ineffective for failing to object to this remark. We overrule appellant's twenty-fourth point.

In his twenty-fifth point, appellant claims that the cumulative effect of counsel's failure to request a curative instruction and move for mistrial when the court sustained an objection to leading questions by the prosecutor deems counsel ineffective. When during cross-examination, Wyatt, appellant's sister, testified that she told TDHS that appellant was living at 2800 Lena, the State followed up by asking her, "Is it fair to say, you're trying to avoid getting in any kind of trouble if you said that the Defendant was living on Glasgow with you?" She said yes. The State then asked, "That's the reason you told the caseworker about the 28 - -." Counsel objected to the question as leading, and the trial court sustained the objection. Counsel did not ask for a curative instruction or move for a mistrial. However, neither was necessary here because the jury was not left with a false impression; the TDHS form was admitted as evidence, and the jury was able to gauge Wyatt's credibility on direct and cross. We overrule appellant's twenty-fifth point.

Appellant's twenty-sixth point also brings into question counsel's response to a leading question by the State. Appellant claims that during direct of

27

Detective Tillerson, who was the officer to whom appellant was to report for registration purposes, the prosecutor "framed his questions, asserting as fact, that the appellant moved to three addresses without notifying Ms. Tillerson." The prosecutor questioned Detective Tillerson as follows:

Q. Okay. What address did this Defendant give you where he was living?

A. I believe then on Lena Street.

Q. 2800 block of Lena Street, Fort Worth, Texas?

A. Yes.

. . . .

Q. Did you explain to this Defendant that if he moved or changed addresses, he personally had to come see you?

A. Yes.

Q. Did he acknowledge he understood that?

A. Yes.

Q. After March 20th of 2006, at any time, the year 2006, did the Defendant come to you and tell you that he was living at a different address?

A. In 2006, no.

Q. Never personally came in and said, hey, I've moved to 729 Glen Garden?

A. No.

Q. I'm now living at 1404 Glasgow Road?

A. No.

Q. I'm living at - - I think it's the 3400 block of James Avenue?

A. No.

Q. At all times in 2006, the address that this Defendant had given to you personally, as required by law, was the 2800 block of Lena Street, Fort Worth, Texas?

A. Yes.

[COUNSEL]: Judge, I object. I've been refraining from objecting to leading questions, but it's gone on long enough.

THE COURT: Sustained.

According to appellant, "[w]ithout any curative instructions, the false impression was left on the minds of the jury" that he had moved at least three times without informing police. He complains that this was exacerbated by the prosecutor's closing argument stating that, "I do not have to go to three or four different addresses over two or three days to hunt you if you are where you said you are," referring to officers' having had to go to several different locations before finding appellant in August 2006. Appellant contends counsel should have asked for an instruction to the jury to disregard.

Appellant's sister had already testified that he never lived at 2800 Lena. Counsel's strategy to discredit her testimony by showing she lied to TDHS was apparent. The State had already established through Detective Ufkes that appellant was not at 2800 Lena when the detective visited the house and that police finally found appellant at the third location they visited. In addition, the State had already established through Detective Tillerson that 2800 Lena was

29

the only address appellant had given the Fort Worth police. Thus, even if counsel's strategy for allowing the leading questioning to go on was not reasonable, we do not believe there is a reasonable probability that the result of the trial would have been different if counsel had objected sooner. We overrule appellant's twenty-sixth point.

In his twenty-seventh point, appellant contends counsel was ineffective for failing to object to improper argument that misstated the law. During closing, the prosecutor called State's exhibit 5, the information form appellant filled out while on bond stating that he had lived at 729 Glen Garden since April 2006, "a handwritten confession." Appellant contends that the form shows no indicia of a confession, that the jury was misled to believe that appellant had legally confessed to the offense, and that his defense was undermined and his credibility called into question. Defense counsel had already addressed exhibit 5 in his closing argument, stating "this entire family has problems with dates and places and locations. He told them that, but did you ever hear the State say, he, in fact, was living at the Glen Garden address? There was no testimony as to that." Because counsel had already dealt with this evidence, he may very well have not wanted to call attention to the State's characterization of the exhibit as a confession when the document's nature was clearly explained when it was admitted. We conclude and hold that counsel was not ineffective for failing to object to this argument, and we overrule appellant's twenty-seventh point.

30

In his twenty-eighth point, appellant contends counsel was ineffective for failing to object to the prosecutor's argument outside the record that appellant never worked at Whataburger. As we have explained, whether appellant worked at Whataburger is not relevant to whether he was living at 2800 Lena. Accordingly, we overrule appellant's twenty-eighth point.

In his thirty-first point, appellant claims counsel was ineffective for failing to object and move for mistrial when the prosecutor "improperly [led] the jury to believe that the appellant, in fact, was a habitual criminal" during voir dire questioning. The record shows that the prosecutor was questioning the jury about the purpose of the habitual offender paragraphs in the indictment (that if proven they increase the range of punishment) and what type of evidence would be appropriate for punishment rather than guilt/innocence. Nowhere does the prosecutor intimate that appellant himself is a habitual offender, only that he was charged with such. *Hanson v. State*, 269 S.W.3d 130, 134 (Tex. App.—Amarillo 2008, no pet.). We overrule appellant's thirty-first point.

In his thirty-second point, appellant claims counsel was ineffective for failing to object to the prosecutor's suborning perjury when he asked Ayala whether appellant was charged with a first-degree felony, knowing that the failure to report offense is a second degree felony. Not only is the record silent as to the prosecutor's knowledge of what Ayala would answer or her state of mind, the question about whether appellant was on bond for a first degree felony was proper because with the inclusion of the habitual offender paragraphs in the

31

indictment, if proven, appellant was charged with a first-degree felony. *See* Tex. Code Crim. Proc. Ann. art. 62.102(b)(2), (c); Tex. Penal Code Ann. § 12.42(b) (West Supp. 2011). We overrule appellant's thirty-second point.

In his thirty-fourth point, appellant contends counsel should have objected to the following argument expressing the prosecutor's personal opinion of guilt: "The Defendant is the convicted sex offender in this case, and it is his burden to apprise law enforcement of where he is . . . . He may not like it, but it's his duty and it's the law." According to appellant, this remark "implied that there is evidence that the appellant has failed to register previously." We do not believe the remark can be so construed, but even if it could, we conclude and hold that any error was harmless; thus, counsel's failure to object to this remark did not deprive the trial of a reliable result. *See Allen v. State*, 149 S.W.3d 254, 261 (Tex. App.—Fort Worth 2004, pet. ref'd) (holding more direct statement of prosecutor's opinion harmless). Accordingly, we overrule appellant's thirty-fourth point.

**Allegedly Eliciting Improper Testimony and Failing to Call Witness**

Appellant contends in his thirtieth point that counsel was ineffective for eliciting testimony of appellant's previous convictions. During questioning by defense counsel whether appellant had ever lived at the 1404 Glasgow address, appellant's sister Wyatt responded that he had, "[e]ach time he came home from prison." Counsel repeated "each time he came home from prison" in two of his subsequent questions. However, the State had already introduced evidence of

appellant's prior conviction for indecency with a child resulting in at least one nine-year prison sentence. Counsel may well have wanted to minimize any potential effect of Wyatt's answer by refraining to object to her statement. As for repeating her answer; the jury was well aware that appellant had a prior record of at least a sex offense, so the effect was likely not as significant as it would have been in a trial in which a prior offense was not a predicate finding for the charged offense. We conclude and hold that in the absence of a record showing counsel's reason from refraining from objecting, we cannot say that counsel was ineffective for so refraining. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011). We overrule appellant's thirtieth point.

In his thirty-third point, appellant contends that counsel was ineffective for failing to subpoena a licensed professional counselor as requested by appellant to testify that appellant was not a continuing threat to children. According to appellant, that was his only viable defense. But whether appellant requested that counsel subpoena this counselor and what the counselor would have testified to are not included in our appellate record. Without such evidence in the record, we cannot determine whether the trial's result would have been different but for this alleged deficiency by counsel. We overrule appellant's thirty-third point.

**Summary**

We have thoroughly reviewed the record as to each instance of alleged error by counsel claimed by appellant. We find nothing that would, standing alone or cumulatively, constitute ineffective assistance. *See Lopez*, 343 S.W.3d

33

at 143 & nn. 35–36; *Ex parte Niswanger*, 335 S.W.3d 611, 615–16 (Tex. Crim. App. 2011).

## Jury Charge

In his thirty-fifth and thirty-seventh points, appellant contends that the jury charge at guilt-innocence failed to require the jury to find beyond a reasonable doubt that his indecency conviction was reportable and that the jury charge at punishment failed to require the jury to find the habitual offender allegations beyond a reasonable doubt in violation of *Apprendi v. New Jersey*. 530 U.S. 466, 120 S. Ct. 2348 (2000). Upon review of both charges, they clearly require the jury to find beyond a reasonable doubt that appellant's indecency conviction is reportable and that appellant committed the offenses alleged in the habitual offender paragraph of the indictment. We overrule appellant's thirty-fifth and thirty-seventh points.

## Conclusion

Having overruled all of appellant's thirty seven points, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 10, 2011