

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00258-CR

———————————————

CAROLYN RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1857880

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Carolyn Rodriguez appeals the trial court's judgment convicting her of hindering an official proceeding by disorderly conduct. *See* Tex. Penal Code Ann. § 38.13(a), (b). On appeal, Rodriguez argues in four issues that (1) Penal Code Section 38.13 is unconstitutional both on its face and as applied in this case; (2) the trial court erred by granting the State's motion to quash her subpoena compelling a witness's attendance at trial; (3) the jury charge was erroneous because it failed to properly tailor the definitions of the culpable mental states to the charged offense, its application paragraph permitted a conviction without a unanimous verdict, and it did not include a freedom-of-speech instruction; and (4) the evidence is insufficient to support her conviction. We affirm.

### I. BACKGROUND

On January 28, 2025, Rodriguez attended a scheduled meeting of the Tarrant County Commissioners Court. Before the meeting, she had signed up to be a speaker during the designated "public comments" period. When her name was called, she approached the podium to speak for her allotted three minutes. She began her remarks by boasting about her large social media following before offering her critique of the Commissioners Court's recently enacted rules of decorum, which she argued were unconstitutional because they banned the use of profanity. She cited three court cases to support her contention that the Commissioners Court could not

2

ban profanity because it constituted protected speech under the First Amendment.[1] She then began listing examples of profanity that she claimed "[w]e have the right to say." At that, County Judge Tim O'Hare ordered sheriff's deputies to remove Rodriguez from the meeting.

As she was being escorted out, Rodriguez yelled, "F*ck you!" Following this outburst, Tarrant County Chief Deputy Sheriff Craig Driskell ordered other deputies to place Rodriguez under arrest for disorderly conduct. As she was being arrested in the lobby outside the courtroom, Rodriguez began yelling profanities. Judge O'Hare called the next speaker, but Deputy Driskell testified that Rodriguez's screaming made it difficult to continue with the meeting. Indeed, according to Deputy Driskell, Rodriguez's yelling was so loud that it sounded as though she were still in the courtroom.

Rodriguez was charged with hindering an official proceeding by disorderly conduct. She pleaded not guilty, and a jury trial was held. After considering all the evidence, the jury found her guilty. Following the trial's sentencing phase, the jury assessed her punishment at 270 days in jail and a $2,000 fine. The trial court sentenced her accordingly, but in accordance with the jury's recommendation, it suspended her sentence and placed her on eighteen months' community supervision. This appeal followed.

---

[1]The cases that Rodriguez cited were all from jurisdictions outside Texas.

## II. DISCUSSION

As noted, Rodriguez raises four issues on appeal. Because her constitutional and legal-sufficiency complaints would—if sustained—afford her the greatest relief, we address those issues first. *See Valk v. Copper Creek Distribs.*, No. 24-0516, 2026 WL 1041612, at *3 (Tex. Apr. 17, 2026); *Chaney v. State*, 314 S.W.3d 561, 565 n.6 (Tex. App.—Amarillo 2010, pet. ref'd) ("Generally, when a party presents multiple grounds for reversal, an appellate court should first address those points that would afford the party the greatest relief." (first citing Tex. R. App. P. 43.3; and then citing *Bradleys' Elec. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999))); *see also Griswold v. State*, 673 S.W.3d 423, 430 (Tex. App.—Dallas 2023, no pet.) (addressing appellant's third issue raising facial constitutional challenge to statute under which he was convicted before considering his other appellate issues); *Owens v. State*, 135 S.W.3d 302, 305 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (addressing appellant's legal-sufficiency challenge first because if evidence were insufficient, the appellate court must render judgment of acquittal).

### A. Constitutional Complaint

In her first issue, Rodriguez contends that Penal Code Section 38.13 is unconstitutional both on its face and as applied in this case. We disagree on both fronts.

### 1. Facial Challenge

Rodriguez asserts that Section 38.13 is facially unconstitutional because it is impermissibly vague and overbroad. She argues that the statute violates the First Amendment "because it sweeps [protected speech] within its prohibitions."[2] *See* U.S. Const. amend. I.

We review a constitutional challenge de novo as a question of law, presuming that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting it. *Goyzueta v. State*, 266 S.W.3d 126, 130 (Tex. App.—Fort Worth 2008, no pet.). Section 38.13, which is entitled "Hindering Proceedings by Disorderly Conduct," provides, in relevant part,

> (a) A person commits an offense if he intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance.

> (b) A person commits an offense if he recklessly hinders an official proceeding by noise or violent or tumultuous behavior or disturbance and continues after explicit official request to desist.

Tex. Penal Code Ann. § 38.13 (a), (b).

---

[2]Rodriguez also contends that the statute violates Article I, Section 8 of the Texas Constitution. *See* Tex. Const. art. I, § 8. Because, as relevant here, the Texas Constitution does not provide any greater free-speech protections than the First Amendment, our First Amendment analysis also applies to Rodriguez's challenge under the Texas Constitution. *See Compton v. Port Arthur Indep. Sch. Dist.*, No. 09-15-00321-CV, 2017 WL 3081092, at *3 (Tex. App.—Beaumont July 20, 2017, no pet.) (mem. op.) (recognizing that "Texas courts have generally refused to hold that the Texas Constitution's free-speech clause affords a plaintiff greater rights than does the First Amendment except in terms of prior restraint" and applying federal cases when analyzing appellant's free-speech claim).

As the party challenging the statute, Rodriguez bears the burden to establish its unconstitutionality. *Goyzueta*, 266 S.W.3d at 130. Because this is a First Amendment challenge, we must first determine whether the challenged statute "reaches a substantial amount of constitutionally protected conduct" before considering whether it is facially overbroad or vague. *Vill. of Hoffman Ests. v. Flipside Hoffman Ests., Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982).

"The First Amendment generally prohibits the government from prohibiting speech" or expression. *Owens v. State*, 728 S.W.3d 155, 160 (Tex. Crim. App. 2025) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542 (1992)). Thus, a statute that regulates conduct—as opposed to speech—generally does not violate the First Amendment. *See id.* at 163.

Because the parties have not cited—and our research has not revealed—any case law addressing whether Section 38.13 regulates conduct or speech, we look to cases deciding First Amendment challenges to other statutes for guidance. The Texas Court of Criminal Appeals has repeatedly held that the electronic-communications harassment statute—which provides that "[a] person commits an offense if, with intent to harass, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another"[3]—is facially constitutional

---

[3] Tex. Penal Code Ann. § 42.07(a)(7).

because it regulates conduct and not speech. *See id.*; *Ex parte Barton*, 662 S.W.3d 876, 884 (Tex. Crim. App. 2022); *Ex parte Sanders*, 663 S.W.3d 197, 216 (Tex. Crim. App. 2022). This is so because the statute's "gravamen is the sending of repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. No speech is required to commit the crime." *Owens*, 728 S.W.3d at 163 (citation modified). "The statute is equally violated by the repeated sending of communications containing expressive speech as it is by the repeated sending of communications containing no speech at all." *Sanders*, 663 S.W.3d at 215–16. Thus, it "focuses upon conduct that is not inherently expressive." *Owens*, 728 S.W.3d at 163. Similarly, the Court of Criminal Appeals has held that the telephone harassment statute—which makes it an offense to "cause[ a person's] telephone . . . to ring repeatedly or [to] make[] repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend" the recipient "with intent to harass, annoy, alarm, abuse, torment, or embarrass" that recipient[4]—does not implicate the First Amendment because it criminalizes harassing conduct, not speech. *See Scott v. State*, 322 S.W.3d 662, 666 n.4, 669 (Tex. Crim. App. 2010), *abrogated by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014).

---

[4]Tex. Penal Code Ann. § 42.07(a)(4).

The Court of Criminal Appeals' rationale for holding that the electronic-communications and telephone harassment statutes do not implicate the First Amendment applies with equal force to the statute challenged here. Section 38.13 criminalizes "hinder[ing] an official proceeding" by making a "noise," engaging in "violent or tumultuous behavior," or creating a "disturbance." *See* Tex. Penal Code Ann. § 38.13(a), (b). On its face, the statute does not regulate speech, and no speech is required to violate it. *See id.* Although the statute could be violated by expressive conduct such as shouting a message, it could just as easily be violated by nonexpressive conduct such as clanging two cymbals together, blowing a loud whistle, or assaulting someone. Because Section 38.13 regulates conduct that is not inherently expressive, it does not implicate the First Amendment. *See Owens*, 728 S.W.3d at 163; *Barton*, 662 S.W.3d at 881.

Accordingly, we use "the familiar 'rational basis' test" to determine whether Section 38.13 is facially unconstitutional. *See Barton*, 662 S.W.3d at 884 (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461, 101 S. Ct. 715, 722 (1981)). Thus, "we will uphold the statute as long as it is 'reasonable, not arbitrary, and rationally related to a legitimate state interest.'" *Valdesgalvan v. State*, 664 S.W.3d 407, 413 (Tex. App.—Fort Worth 2023, no pet.) (quoting *Thomas v. State*, 651 S.W.3d 102, 108 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd)).

The state has a self-evident and legitimate interest in ensuring that official proceedings can be conducted in an orderly fashion and are not impeded or

8

obstructed. *Cf. Shanker v. Helsby*, 676 F.2d 31, 34 (2d. Cir. 1982) (recognizing the "legitimate state interest . . . in protecting the public by assuring uninterrupted government operations"); *Kaelin v. Warden*, 334 F. Supp. 602, 611 (E.D. Penn. 1971) (Kraft, J., dissenting) ("The State has an overriding legitimate interest in the orderly continuation of the operations of local government . . . ."). Section 38.13 serves that interest by punishing those who intentionally or recklessly hinder official proceedings "by noise or violent or tumultuous behavior or disturbance." Tex. Penal Code Ann. § 38.13(a), (b). And we cannot conclude that prohibiting such obstructive conduct is arbitrary or unreasonable. Accordingly, Section 38.13 is not facially unconstitutional. *See Barton*, 662 S.W.3d at 885.

### 2. As-Applied Challenge

The fact that Section 38.13 does not implicate the First Amendment and is facially constitutional does not foreclose a complaint that it has been unconstitutionally applied in a specific case. *See Owens*, 728 S.W.3d at 160. "The merits of such a challenge depend on the evidence." *Id.* (citing *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)). The complainant must show that the statute was unconstitutionally applied to her. *Id.* (citing *Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016)).

Rodriguez asserts that Section 38.13 was unconstitutionally applied in this case because she was prosecuted based on the content of her speech rather than her conduct. She points to Deputy Driskell's testimony that he would not have arrested

her if she had said "[t]hank you for your time" as she was being escorted out of the courtroom instead of yelling "f*ck you." But in advancing this argument, Rodriguez selectively ignores other parts of the deputy's testimony.

Asked why he had initially placed Rodriguez under arrest for hindering an official proceeding, Deputy Driskell gave the following response:

> When the judge asked for her to be removed -- Ms. Rodriguez to be removed -- and the deputies started motioning her away, before she was even -- even out of the court, she was screaming and yelling. And it wouldn't matter if she was saying unicorns and rainbows or whatever; it was the fact that she was interrupting the court and the court couldn't proceed with the next speaker.

And when defense counsel asked him during cross-examination whether he would have arrested Rodriguez if she had merely said "[t]hank you for your time" instead of using profanity, Deputy Driskell responded that he "wouldn't [have] arrest[ed] her for that," but he went on to explain that "if she [had been] yelling and being disruptive the whole way out," he still would have arrested her "for hindering . . . the meeting." Thus, viewed as a whole, Deputy Driskell's testimony reflects that he arrested Rodriguez because of her loud and disruptive conduct, not because of the content of her speech. Accordingly, we conclude that Section 38.13 was not unconstitutionally applied to Rodriguez.

### 3. Disposition of First Issue

Having determined that Section 38.13 is not facially unconstitutional and that it was not unconstitutionally applied in this case, we overrule Rodriguez's first issue.

10

## B. Sufficiency of the Evidence

In her fourth issue, Rodriguez contends that the evidence is insufficient to support her conviction. We disagree.

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the challenged essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *Stephenson v. State*, 673 S.W.3d 370, 384 (Tex. App.—Fort Worth 2023, pet. ref'd). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not

11

engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## 2. Analysis

Rodriguez argues that the evidence is insufficient to show that her conduct actually hindered the Commissioners Court's proceeding.[5] To support this argument, she points to Commissioner Alisa Simmons's testimony that she did not believe that Rodriguez's conduct "hindered the Commissioner's Court from conducting its business." According to Rodriguez, because Simmons is a sitting commissioner, she was the "best witness" to make that determination.

But the mere fact that the record contains conflicting evidence does not render the evidence insufficient to support Rodriguez's conviction. *See Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996). The jury, as factfinder, was free to judge the weight and credibility of all the evidence—including Simmons's testimony—and to resolve any conflicting inferences within it. *See* Tex. Code Crim. Proc. Ann. art.

---

[5]In her reply brief, Rodriguez additionally argues that the evidence is insufficient to show that she acted with the requisite degree of mental culpability—that she either intentionally hindered the proceeding or recklessly did so after receiving an "explicit official request to desist." *See* Tex. Penal Code Ann. § 38.13(a), (b). But because Rodriguez did not raise this argument in her opening brief and "[b]ecause an appellant is prohibited from raising 'a completely different sufficiency challenge for the first time in a reply brief[,]'" we do not consider it. *Collins v. State*, No. 04-20-00139-CR, 2022 WL 527668, at *4 n.5 (Tex. App.—San Antonio Feb. 23, 2022, no pet.) (mem. op., not designated for publication) (quoting *Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019)); *see also Esparza v. State*, No. 14-22-00572-CR, 2024 WL 2364394, at *4 (Tex. App.—Houston [14th Dist.] May 23, 2024, pet. ref'd) (mem. op., not designated for publication) (declining to consider appellant's argument raised for the first time in his reply brief that "the evidence [was] insufficient to prove he knew an investigation was pending" because he had not challenged the sufficiency of the evidence to support this particular element of his tampering-with-evidence offense in his opening brief).

38.04; *Martin*, 635 S.W.3d at 679; *Thomas v. State*, No. 02-24-00044-CR, 2024 WL 4899019, at *3 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.) (mem. op., not designated for publication). Deputy Driskell testified that Rodriguez's yelling in the lobby hindered the court's business because it was so loud that it could be heard inside the courtroom and "interfer[ed] with the person who[ was] lined up next to speak." And because the audiovisual recording of the meeting was admitted into evidence, the jury could directly observe Rodriguez's conduct and assess its effect on the proceeding. Based on Deputy Driskell's testimony and the audiovisual recording, a rational factfinder could have found that Rodriguez's conduct hindered the proceeding. Accordingly, the evidence is sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

We overrule Rodriguez's fourth issue.

## C. Quashing of Subpoena

In her second issue, Rodriguez contends that the trial court erred by quashing her subpoena compelling County Judge Tim O'Hare to appear as a defense witness. We disagree.

### 1. Applicable Law and Standard of Review

Criminal defendants have a right to compulsory process for obtaining witnesses. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. "But the right to compulsory process is not absolute." *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd). A defendant has the right to secure the

14

attendance of witnesses whose testimony would be both material and favorable to her defense. *See Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998) (op. on reh'g). But "[c]ounsel's mere belief that a witness would support the defense's case is insufficient to establish materiality." *Emenhiser*, 196 S.W.3d at 921. To exercise the right to compulsory process, a defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 528. "A defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense." *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 869–71, 102 S. Ct. 3440, 3448 (1982)).

Questions regarding limitations on the right to compulsory process are within the trial court's discretion. *Emenhiser*, 196 S.W.3d at 921; *see Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987). We thus review for an abuse of discretion a complaint that the trial court improperly quashed a subpoena. *Emenhiser*, 196 S.W.3d at 921 (citing *Drew*, 743 S.W.2d at 225 n.11). Under this standard, we cannot reverse a trial court's decision unless we determine that it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

## 2. Analysis

Before trial, the State moved to quash two defense subpoenas compelling witnesses to appear and testify—one directed to Judge O'Hare and one directed to Commissioner Simmons. In the motion, the State argued that Rodriguez could not show that the witnesses would provide testimony that was both material and favorable to her defense. *See Coleman*, 966 S.W.2d at 527–28. At the hearing on the motion, Rodriguez's trial counsel acknowledged that Judge O'Hare had not been properly served with the subpoena. *See* Tex. Code Crim. Proc. Ann. art. 24.04(a) (setting forth methods by which a subpoena may be served). Further, although Rodriguez's counsel argued that Judge O'Hare could potentially offer noncumulative evidence, he made no showing of actual testimony that he expected Judge O'Hare to provide that would be both material and favorable to the defense. The trial court initially took the matter under advisement and instructed the State to ensure that Judge O'Hare would be available to appear at trial, but it ultimately granted the State's motion as it applied to Judge O'Hare and quashed the subpoena directed to him.

On appeal, Rodriguez argues that the trial court erred by quashing the subpoena directed to Judge O'Hare because it did not also quash the subpoena directed to Commissioner Simmons. According to Rodriguez, "logically if the trial court found sufficient grounds to quash one of the subpoenas, then there were sufficient grounds to quash both subpoenas." But Rodriguez's argument is based on flawed logic and ignores the record.

16

Rodriguez's counsel represented to the trial court that Commissioner Simmons had conveyed to him that she wanted to testify regardless of whether she was subpoenaed. Accordingly, she could be expected to provide evidence favorable to the defense, and she in fact did so. In contrast, Rodriguez failed to make a plausible showing by sworn evidence or agreed facts that Judge O'Hare's testimony would be both material and favorable to the defense. *See Coleman*, 966 S.W.2d at 528. Further, as noted, Rodriguez's trial counsel acknowledged that O'Hare had not been properly served with the subpoena; this procedural defect, standing alone, constituted sufficient grounds for quashing it. *See Herrera v. State*, Nos. 05-15-00119-CR through 05-15-00121-CR, 2016 WL 3098699, at *8 (Tex. App.—Dallas May 23, 2016, no pet.) (mem. op., not designated for publication) (holding that trial court had not abused its discretion by quashing subpoena compelling appearance of out-of-state witness because the record "establish[ed] that the subpoena [had not been] properly issued and served"). Thus, the record supports the disparate outcomes regarding the State's motion to quash the two subpoenas, and we cannot say that the trial court abused its discretion by quashing only the one directed to Judge O'Hare.

We overrule Rodriguez's second issue.

## D. Charge Error

In her third issue, Rodriguez contends that the jury charge contained several errors, arguing that (1) it failed to properly tailor the definitions of the culpable mental states to the charged offense, (2) its application paragraph permitted a conviction

17

without a unanimous verdict, and (3) it did not include a freedom-of-speech instruction. We will address each of these purported errors in turn below.

### 1. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* But if the charge is erroneous, then we must decide whether the appellant was harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *see Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The standard of review to be applied in assessing harm depends on whether the defendant preserved the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* But in the absence of a timely objection, the record must show "egregious harm." *Id.*

### 2. Definitions of Culpable Mental States

Rodriguez argues that the jury charge was erroneous because it failed to properly tailor the definitions of the applicable culpable mental states to the charged offense. Specifically, she asserts that the definition of *intentionally* should have included only result-of-conduct language, not nature-of-conduct language, and that the definition of *recklessly* should have included both nature-of-conduct and result-of-conduct language instead of nature-of-circumstances language. The State

18

concedes that the trial court erred by excluding result-of-conduct language from both definitions but asserts that the trial court properly included nature-of-conduct language in defining *intentionally* and nature-of-circumstances language in defining *recklessly*. Despite conceding error, the State argues that reversal is not warranted because Rodriguez was not harmed. We agree with the State.

The trial court is required to give the jury a written charge that, among other things, "set[s] forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. The "law applicable to the case" includes "statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *see Watson v. State*, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977) ("The trial court should always include the statutory definitions in its jury instructions where applicable.").

The Texas Penal Code defines four separate culpable mental states, including *intentionally* and *recklessly*. *See* Tex. Penal Code Ann. § 6.03. "[T]he scope of those culpable mental states is limited by the type of offense," which depends on the "conduct element." *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). There are three such conduct elements: (1) nature of conduct, (2) result of conduct, and (3) circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). When defining a culpable mental state in the jury charge, the trial court should tailor the definition to the relevant conduct element by looking

19

to the charged offense's gravamen.[6] *See Price*, 457 S.W.3d at 441. Thus, "[i]f the gravamen of an offense is the result of conduct, the jury charge on culpable mental state should be tailored to the result of conduct and likewise for nature-of-conduct offenses." *Id.* If the charged offense has multiple gravamina involving different conduct elements, the culpable-mental-state definition should include language pertaining to all the applicable conduct elements. *Id.*

As the State persuasively argues, the hindering-proceedings-by-disorderly-conduct offense codified by Penal Code Section 38.13 has multiple gravamina. Under Section 38.13, a person commits an offense if she:

- "intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance" or

- "recklessly hinders an official proceeding by noise or violent or tumultuous behavior or disturbance and continues after explicit official request to desist."

Tex. Penal Code Ann. § 38.13(a), (b). Thus, one gravamen of the offense is the result—a proceeding's hindrance. But the result is not the exclusive gravamen. To be guilty under Section 38.13(a), a person must also intentionally engage in conduct of a specific nature—making a "noise," behaving "violent[ly] or tumultuous[ly]," or creating a "disturbance." *See id.* § 38.13(a). And to be guilty under Section 38.13(b), a

---

[6]The gravamen is the "gist; essence; [or] substance" of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). When determining an offense's gravamen, appellate courts may focus on the statute's grammar and what element completes the offense. *See Loving v. State*, 401 S.W.3d 642, 647 (Tex. Crim. App. 2013).

person must also be reckless as to the circumstances of her conduct—that is, she must consciously disregard the risk that she will hinder an official proceeding and continue engaging in disruptive conduct even after receiving an explicit official request to stop. *See id.* § 38.13(b). Accordingly, the offense has multiple gravamina: under Subsection (a), the gravamina are result of conduct and nature of conduct, and under Subsection (b), the gravamina are result of conduct and circumstances surrounding the conduct.

Thus, the charge's definitions of *intentionally* and *recklessly* were not incorrect, but they were incomplete. The trial court included only nature-of-conduct language in defining *intentionally* and included only nature-of-the-circumstances language in defining *recklessly*. Because the charge did not include result-of-conduct language in either definition, it was erroneous. *See Price*, 457 S.W.3d at 441; *see also* 8 Michael J. McCormick et al., *Texas Practice: Texas Criminal Forms and Trial Manual* § 127.10 (11th ed. 2025) (including nature-of-conduct and result-of-conduct language in definition of *intentionally* and nature-of-the-circumstances and result-of-conduct language in definition of *recklessly* in pattern jury charge for hindering-proceedings-by-disorderly-conduct offense).

Having concluded that the charge was erroneous, we must determine whether Rodriguez was harmed. *See Wooten*, 400 S.W.3d at 606; *see also Mosley v. State*, 686 S.W.2d 180, 182 (Tex. Crim. App. 1985) (explaining that if a jury charge fails to include a required statutory definition, the "omission of such definition must still be

examined in light of the entire record of the case to determine whether the accused has been harmed by the omission"). Because Rodriguez objected to the definitions of the culpable mental states,[7] she is entitled to reversal if the record shows that she suffered "some harm"—that is, that "the error [was] not harmless." *Almanza*, 686 S.W.2d at 171. Reversal is required only if Rodriguez suffered some actual— rather than merely theoretical—harm from the error. *Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020). The harm analysis requires consideration of (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) any other relevant factors present in the record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Here, the record does not show that Rodriguez suffered any actual harm.[8] First, considering the jury charge as a whole, we note that the application paragraph

---

[7]As the State points out, Rodriguez asserted at the charge conference that the definition of *intentionally* should be result-oriented and that the definition of *recklessly* should be nature-of-conduct oriented. She never objected to the omission of result-of-conduct language from the definition of *recklessly*. Nevertheless, the State does not dispute that Rodriguez preserved her charge-error complaint and that she would be entitled to reversal if she could show some harm.

[8]In her opening brief, Rodriguez failed to explain how, if at all, the trial court's incomplete definitions of intentionally and recklessly caused reversible harm. Rather, she simply stated in conclusory fashion that she "suffered some harm when she was convicted after objecting to the charge error." By failing to address this essential issue, Rodriguez arguably forfeited her definition-based charge-error complaint due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding that appellant had forfeited issues due to inadequate briefing by, among other things, failing to "address the question of whether the alleged

22

provided that to find her guilty, the jury must find that she "did intentionally hinder an official proceeding" or "did recklessly hinder an official proceeding . . . after explicit official request to desist." Thus, the charge—tracking the language of Section 38.13—properly instructed the jury that to find Rodriguez guilty, it must first find that she had actually hindered an official proceeding and that she had done so either intentionally or recklessly. *See, e.g., Fuller v. State*, 819 S.W.2d 254, 257 (Tex. App.—Austin 1991, pet. ref'd) (concluding that appellant had not "suffered any actual harm" from the charge's erroneous inclusion of nature-of-conduct language in the definitions of *intentionally* and *knowingly* because, among other things, the application paragraph made clear that "the jury could not have convicted appellant without a finding that he intended the result or knew what the result would be").

Second—and perhaps most significantly—Rodriguez's defensive theory was not that she lacked intent to hinder the proceeding (or that she had not been reckless in hindering it). Rather, as she repeatedly acknowledges in her briefing, "[t]he crux of

---

error . . . was harmless"); *Thomas v. State*, No. 06-21-00138-CR, 2022 WL 3048223, at *9 (Tex. App.—Texarkana Aug. 3, 2022, no pet.) (mem. op., not designated for publication) (citing *Cardenas* and holding that appellant had forfeited his charge-error complaint because "he provided no harm analysis other than a conclusory statement that the harm was egregious"); *Yepez v. State*, 696 S.W.3d 1, 10 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (holding that appellant had forfeited charge-error complaint "by inadequately briefing the issue of harm"). Nevertheless, in our discretion, we address its merits. *See Zermeno v. State*, No. 14-19-00789-CR, 2021 WL 4472528, at *3 n.4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op., not designated for publication) (exercising discretion to address issue on the merits despite appellant's inadequate briefing but admonishing that failure to comply with briefing requirements "usually results in the waiver of an issue").

[her] defense" was that "there was no hinderance to the proceeding[]" in the first place. The fact that the debate at trial was focused on whether the proceeding was actually hindered, not whether Rodriguez acted with the relevant mens rea when she hindered it, undermines her argument that she suffered actual harm from the charge's incomplete culpable-mental-state definitions. *See Hunt v. State*, No. 02-23-00259-CR, 2024 WL 4562494, at *4 (Tex. App.—Fort Worth Oct. 24, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that appellant had not suffered "any actual harm" from the trial court's failure to properly tailor the definitions of the culpable mental states to his charged offense because, among other things, "there [had been] no debate [at trial] about whether [the appellant had] acted with the relevant mens rea").

The State concedes that the prosecutor emphasized the charge's erroneous definition of *intentionally* in the following portion of his closing argument:

This is not about free speech. It's about conduct.

[Bec]ause you notice at no time [did] Defense counsel tell you -- but the judge just told you -- "a person acts intentionally or with intent with respect to the nature of her conduct." Not the result. The nature of her conduct. Left that part out, because we can't talk about the law that actually applies.

Nature of her conduct when it is her conscious objective or desire to engage in the conduct. She's continuing to scream the entire time.

But as the State points out, this argument was a direct response to Rodriguez's counsel's closing argument, which failed to address the nature-of-conduct aspect of

24

intent at all. Further, the statement leading into the prosecutor's comments about the definition of *intentionally*—which emphasized that the case is "about conduct," not free speech—shows that his comments were designed to help the jury understand that this was not actually a free-speech case and that Rodriguez had been charged with an offense based on her disruptive conduct, not the content of her speech. And because, as noted, Rodriguez herself acknowledges that her defensive theory was that the proceeding was never actually hindered "regardless of whether [she] . . . intended . . . that result or was reckless after [receiving] an explicit official request to desist," the prosecutor's comments weigh only slightly, if at all, in favor of harm.

In her reply brief, Rodriguez argues that the following excerpt from the prosecutor's closing argument—which immediately followed the portion quoted above—encouraged the jury to find her guilty based solely on the nature of her conduct, not the result:

> Do you notice the judge doesn't say in here that the next speaker has to -- has to be interrupted? You notice he did have to pause and wait till . . . she quits. It doesn't say in here the Commissioners Court has to be going into executive session or take a break. [Bec]ause she's screaming the entire time, that's hindering.

But it does no such thing. In this excerpt, the prosecutor was not arguing that Rodriguez could be convicted even if the proceeding had not actually been hindered; rather he was discussing what constitutes a hindrance. Indeed, he explicitly pointed out that the next speaker "ha[d] to pause and wait" until Rodriguez quit screaming.

25

He was merely making the point that the jury could find that the proceeding was hindered even though Rodriguez did not directly interrupt the next speaker or cause the Commissioners Court to take a recess; he was not arguing that it could convict her even without any hindrance.

Finally, the entirety of the evidence does not reveal that Rodriguez suffered harm. As the State argued at trial, the fact that Rodriguez opened her remarks to the Commissioners Court by discussing her large social-media following suggests that she went to the proceeding with the intent to disrupt it so that she could generate content for her various social-media platforms. And her intent to hinder the proceeding could also be inferred from her yelling "f*ck you" as she was being removed from the courtroom and her screaming and yelling profanities for an extended period after her removal—all of which was captured in the audiovisual recording of the meeting admitted as State's Exhibit 1. Thus, the record contains strong evidence that Rodriguez possessed the requisite culpable mental state. *Cf. Johnson v. State*, No. 02-24-00439-CR, 2025 WL 3301068, at *4 (Tex. App.—Fort Worth Nov. 26, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that evidence did not show that appellant convicted of evading arrest or detention with a vehicle had been harmed by jury charge's failure to define *knowingly* because the evidence—including police officer's dashcam footage—"strongly indicate[d] that [appellant] knew that peace officers were attempting to arrest or detain him").

26

In sum, after considering the entire record, including the jury charge as a whole, the arguments of counsel, and the entirety of the evidence, we cannot conclude that Rodriguez was harmed by the lack of result-of-conduct language in the jury charge's definitions of *intentionally* and *recklessly*.

### 3. Application Paragraph

Rodriguez also argues that the jury charge was erroneous because it allowed the jury to convict her on less than a unanimous verdict. She asserts that because the two subsections of Section 38.13 constitute separate offenses, not different manners and means of a single offense, the jury should have been instructed that it must reach a unanimous verdict as to whether she intentionally hindered the proceeding or recklessly hindered it after an explicit official request to desist. Thus, according to Rodriguez, the trial court erred by including a single application paragraph addressing both the intentional and the reckless hindering of an official proceeding instead of splitting these two purportedly distinct offenses into separate application paragraphs. We disagree.

Rodriguez relies on *Ngo v. State* to support her argument. 175 S.W.3d at 744. In that case, the Court of Criminal Appeals held that "[w]hen the State charges *different criminal acts*, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." *Id.* (emphasis added). But the majority opinion in *Ngo* makes clear that

it is the actus reus—not the mens rea—that determines whether different statutory methods of committing an offense constitute manners and means of a single offense or wholly separate offenses. *See id.* at 745.

In *Ngo*, the State sought a conviction for a single count of credit-card abuse but charged it under three separate paragraphs alleging three different actions by which the defendant could have committed the offense: stealing the victim's credit card, receiving her credit card knowing that it had been stolen and intending to use it fraudulently, or fraudulently presenting her credit card with the intent to receive a benefit. *Id.* Because each of these paragraphs involved a unique, specific actus reus element, the Court of Criminal Appeals held that each constituted a separate criminal act, not merely a different manner and means of committing a single offense. *Id.* at 745–47. As the majority explained, "[s]tealing a credit card on Monday is not the same specific criminal offense as receiving a stolen credit card on Tuesday or presenting a stolen credit card to a bartender on Wednesday." *Id.* at 745.

But the situation presented here is different. The two subsections of Section 38.13 do not set forth different actions by which someone can commit an offense; rather, they both involve the same action—hindering an official proceeding "by noise or violent or tumultuous behavior or disturbance." *See* Tex. Penal Code Ann. § 38.13(a), (b). The two subsections differ only with respect to the requisite culpable

28

mental state.[9] *See id.* And the allegations against Rodriguez involved only a single act of hindrance; the State did not allege that Rodriguez intentionally hindered a proceeding on Day X and then recklessly hindered a proceeding on Day Y. We thus reject Rodriguez's contention that she was, in effect, charged with two separate offenses.

Because the two subsections of Section 38.13 do not constitute separate offenses and because a jury is not required to reach a unanimous verdict on the specific alternative mental states of a single offense as long as it agrees that the State has proved the mens rea element beyond a reasonable doubt, the trial court did not err by including a single application paragraph in the charge addressing both the intentional and the reckless hindering of an official proceeding. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006) ("[W]here the legislature has specified that any of several different mental states will satisfy the intent or mens rea element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the state has proven the intent element

---

[9]Rodriguez notes that Subsection (b) includes an additional element—that the hindrance continued after an "explicit official request to desist." Tex. Penal Code Ann. § 38.13(b). But because this element pertains only to the defendant's mens rea under Subjection (b), not to the actus reus, it does not alter our analysis. *See Ngo*, 175 S.W.3d at 744. Indeed, notwithstanding this additional element in Subsection (b), the Texas Practice Series model jury charge includes a single application paragraph addressing allegations under both subsections—essentially treating the two subsections as alternative manners and means of a single offense. 8 Michael J. McCormick et al., *Texas Practice: Texas Criminal Forms and Trial Manual* § 127.10 (11th ed. 2025).

beyond a reasonable doubt." (quoting *State v. Johnson*, 627 N.W.2d 455, 459–60 (Wis. 2001))); *Davis v. State*, 268 S.W.3d 683, 711 (Tex. App.—Fort Worth 2008, pet. ref'd) ("Jury unanimity is not violated . . . when the jury disagrees on alternate theories of the defendant's mens rea at the time of the offense." (first citing *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); and then citing *De Los Santos v. State*, 219 S.W.3d 71, 76 (Tex. App.—San Antonio 2006, no pet.))).

### 4. Freedom-of-Speech Instruction

Finally, Rodriguez argues that the trial court erred by refusing to include a special freedom-of-speech defensive instruction in the charge. We disagree.

The trial court denied Rodriguez's request to include the following instruction in the charge:

> You are instructed that our law guarantees that every person shall be at liberty to speak his opinion on any subject, being liable for the abuse of that privilege.
>
> Our law guarantees the right of citizens to petition the government for redress of grievances. This ensures citizens can collectively address concerns and seek solutions from those in power through petition, address, or remonstrance.
>
> Now, bearing in mind if you find from the evidence that on the occasion in question that the content of the Defendant's speech was protected by the United States or Texas Constitutions you are not to consider it as any evidence of guilt.

Because a judge may not instruct the jury on nonstatutory defenses, *see, e.g.*, *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998), and because a defendant is not entitled to a special instruction that (1) is not grounded in the Penal Code, (2) is

30

covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence, *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007), the trial court did not err by declining to include Rodriguez's requested freedom-of-speech instruction in the charge.

### 5. Disposition of Third Issue

Having concluded that Rodriguez's charge-error claims are largely meritless and that the charge, in fact, contains only one harmless error, we overrule her third issue.[10]

### III. CONCLUSION

Having overruled all of Rodriguez's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 23, 2026

---

[10]Given this single, harmless error, we likewise reject Rodriguez's cumulative-charge-error complaint. *See, e.g.*, *Abel v. State*, No. 02-18-00051-CR, 2020 WL 5048078, at *36 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (per curiam) (mem. op., not designated for publication) (holding that because the court had overruled appellant's other appellate issues, his "cumulative-error complaint lacks merit because there is no error to cumulate").